*A. J. Utley,* for the motion.

*Hayes & Wright,* contra.

---

## John Napman v. The People.

*Evidence ; 'Detroit City Ordinances : How proved.* The charter of the City of Detroit having provided that the printed volume of city ordinances shall be evidence in all courts, places them, as to all suits brought for the violation of them on the same footing with statutes, so far as relates to the method of proving their contents.

*Complaint for the violation of a City Ordinance : Defective statement of offense.* A complaint charging a person, as an " omnibus agent ", with conduct forbidden to an omnibus agent when acting as a porter or runner for a hotel ; the complaint not averring that the defendant was then acting in such capacity, is too defective to support a conviction.

*Arrangements between Railroad and Omnibus Companies for the delivery of passengers in cities : Municipal interference.* Arrangements made by Railroad Companies with Omnibus Companies, for the delivery of passengers, and their baggage, not unlawful in themselves, and which are made in their own cars, or on their own premises, are exempt from municipal inteference ; and city ordinances, so far as they attempt such interference, are invalid.

*Heard and decided October 27.*

Certiorari to the Recorder's Court of the City of Detroit.

John Napman was charged before the Recorder's Court of the City of Detroit on the complaint of Patrick Keenan " that at the City of Detroit, aforesaid, on the seventeenth day of April, A. D. one thousand eight hundred and sixty-

eight, within the corporate limits of said city, one John Napman, a duly licensed omnibus agent, on the arrival of railroad cars in the city of Detroit, did then and there unlawfully and wilfully approach within twenty feet of the depot, when said cars had stopped running, within fifteen minutes thereafter, said John Napman, omnibus agent as aforesaid, not being requested by any person to remove any trunk or other baggage from said depot, to the evil example of all others in like case offending, and contrary to the ordinances of said city of Detroit, in such case made and provided.—(*Sec. 8, Chap. 88, title 12, p. 190 of Rev. Ord. of 1868.*)

Section eight, of chapter eighty-eight, entitled " Of Porters and Runners " is in the following words:

" No porter, runner, hackmen, draymen, city express men, omnibus agent, omnibus driver, driver of baggage, or other persons acting as porters or runners for hotels, so licensed as aforesaid, shall, on the arrival of any steamboat, or railroad cars in the city of Detroit, for a period of fifteen minutes thereafter, go upon or approach within twenty feet of the wharf or depot where such steamboat or railroad cars have made fast or stopped running, or are about to make fast or stop running, unless such porter, runner, hackmen, draymen, city expressmen, omnibus agent, omnibus driver, or driver of baggage, be requested by a passenger to remove some trunk or other baggage from said wharf or depot, in which case it shall be lawful to go near, in or upon such steamboat or depot for such purpose, under a penalty not to exceed five dollars, in the discretion of the Court, and costs of prosecution, for every such offense."

The Recorder before whom the cause was tried certifies his finding of the facts:

"On the trial of this case all objection to the form of the complaint was waived; and it was admitted that the defendant, at the time mentioned in the complaint, was a licensed omnibus driver.

"Besides the Omnibus Company, with its drivers and agents, there are in the City of Detroit, many hackmen, city express men, porters and runners for hotels. To permit them all to go into the railroad depots immediately upon the arrival of trains to offer their services and solicit patronage, would naturally create great confusion and bewilderment, and be very annoying, embarrassing and harrassing to passengers. The Ordinances under which this complaint is made, having a tendency to prevent these evils, I find to be, (if, and so far as it is a question of fact), reasonable.

" By an agreement between the Detroit & Milwaukee Railroad Company and the Omnibus Company, the drivers and agents of the latter, and they alone are authorized and permitted to go within the depot of the former, immediately on the arrival of any train, to invite passengers to ride in their omnibusses. This agreement is attended with no inconvenience or annoyance to passengers, but very often, if not generally, promotes their comfort by relieving them from the embarrassment of selecting one out of many means of conveyance that may be offered, and I find the regulation of the railroad company, in pursuance of said agreement, (if, and so far as it is a question of fact), reasonable.

" The defendant is a driver of the Omnibus Company, and as such, under the above agreement, within fifteen minutes after the arrival of a train at the Milwaukee Depot, on the day mentioned in the complaint, entered the depot to, and did, solicit passengers to take one of the vehicles of his Company. And it is for this act that he is proceeded against in this complaint.

" And upon these facts, as a conclusion of law, I further find the defendant guilty as charged in the complaint on file against him.

. " GEORGE S. SWIFT,
" Judge of the Recorder's Court."

NAPMAN *v.* THE PEOPLE.

And the judgment upon the finding is now brought into this Court by certiorari.

*J. L. Chipman* and *G. V. N. Lothrop,* for plaintiff in error.

*J. P. Whittemore* and *Moore & Griffin,* for defendant in error.

PER CURIAM.

Inasmuch as the charter of Detroit provides that the printed volumes of ordinances shall be evidence in all courts, we think that in all suits brought for the violation of them, we are bound to examine the book, and are not precluded from doing so by the failure to make copies of them parts of the record. The object of the statute was to put them, as to city matters, on a similar footing with statutes—so far as relates to the method of proving their contents.— *Charter of Detroit, Chap. 11 § 13.*

The ordinances relied upon to sustain this conviction all relate to the conduct of omnibus agents and drivers when acting as porters or runners for public houses or hotels. *Chap. 88, §§ 8, 9, 10.* The provisions are contained in a chapter exclusively devoted to *"porters and runners,"* while there are other chapters relating to the license and regulation of carriages of various kinds when not employed for such agencies. The case is therefore fatally defective in not bringing the defendant within the prohibitions relating to runners for hotels and public houses.

The main question, however, calls for a decision upon the validity of a prohibition which would prevent railroad companies from making such arrangements as are found by the Recorder to have been entered into here. We have no difficulty in deciding that the city cannot lawfully interfere to prohibit such arrangements. The acts done are

done upon the private premises of the railroad companies, over which the city can have no general control; and we think there is no reason why these companies, in their character of carriers of passengers, may not properly make such arrangements as will facilitate their reaching their destination anywhere in the city as well as at the end of the track in the depot. Passengers, who are strangers in the city, have no means of knowing the character of the runners they may encounter outside of the depot, and if they can deal without confusion, and at their leisure, with responsible agents it will be much more convenient and safe than to compel them to select from among strangers and in the noise and bustle attendant on the arrival of the cars. Such contracts of employment, made in the cars and on the premises by the companies cannot be lawfully restrained by the city authorities. No driver can without permission go, of right, on the private property of the rail-railroad company unless employed by a passenger, and the the city could give him no authority to do so. And any arrangements for the delivery of passengers and their baggage—not unlawful in themselves—which are made by the railroads in their own cars, and on their own lands, are exempt from municipal interference; and the ordinances—so far as they may attempt such interference, are invalid. The conviction must be quashed.