The City of Chillicothe v. Brown.

---

The City of Chillicothe, Appellant, v. G. G. Brown, Respondent.

Kansas City Court of Appeals, January 6, 1890.

Police Regulations: REGULATION OF PORTERS AT DEPOTS: POWERS OF RAILWAY COMPANIES TO SUSPEND. The city of Chillicothe has the charter power to regulate hackmen, porters, etc., and an ordinance regulating the conduct of such persons in the pursuit of their business, and forbidding the solicitation of custom at the depot or platform of any railroad within the corporate limits of

the city, is reasonable and valid, and it constitutes no defense to an action by the city for a violation of the ordinance that the superintendent of the railway at whose depot the offense was committed had drawn a line on the platform thereof and told the defendant and others they might stand on platform up to said line and solicit travelers for their hotel, etc., as the railroad company had no authority to suspend at its depot the operation of said municipal ordinance.

*Appeal from the Livingston Circuit Court.*— Hon. J. M. Davis, Judge.

Reversed and remanded.

*Lewis. A. Chapman* and *T. H. Kemp*, for the appellant.

(1) Section 14, of ordinance number 19, revised ordinances of the city of Chillicothe, Missouri, was a lawful exercise of the power given to the city by its charter, which gives the city the right "to regulate, license and restrain runners for cars, stages and public houses." See subdivision twelfth, of section 2 of article 4 of the city charter, in relation to the legislative powers of the city council. *St. Johnsbury v. Thompson*, 9 Atl. Rep. 571. (2) The court committed error, in permitting the defendant and witnesses to testify that some agent of the railroad company had said that defendant, and other runners, and porters, might stand on the platform, and solicit travelers and others for their custom and patronage, up to a certain line, drawn by said agent. If the ordinance was valid, and reasonable, no such defense could be available, and if the ordinance was invalid no such defense would be proper, and would, certainly, be unnecessary. *Commonwealth v. Plaisted*, 23 Am. and Eng. Corporation Cases, 104; *State v. White*, 15 Am. and Eng. Corporation Cases, 9; *Reynolds v. White*, 98 U. S. 145, 161. (3) The instruction, asked by the plaintiff and refused by the court,

was the law as applied to the legal and proper evidence in the case and should have been given. It was asked upon the theory of the plaintiff's case and based upon defendant's own admissions and the evidence in the case, and should have been given, unless the defense set up by the defendant was a good and valid defense. (4) The instruction given by the court, for the defendant, should have been refused, because it is not based on the evidence, or the issues in the case as made by the pleadings. It is not and was not contended that the defendant had not the right to go upon the platform, just the same as any one else had, but the ordinance was intended to prohibit the carrying on of the defendant's business on the platform or in the depot, by asking and soliciting the travelers and passengers to ride in a conveyance, that ran for his hotel, and go to said hotel. (5) The claim cannot be successfully made that the ordinance and section in question are not a reasonable police regulation of the business of "runners for cars, stages and public houses. *Ex parte Byrd*, 5 Am. Stat. Rep. 329; 84 Ala. 17; Horr and Bemis on Mun. Police Ordinances, 32; *Cronin v. People*, 82 N. Y. 318; 37 Am. Rep. 564; *Stables v. State*, 16 Mo. App. 131; *In re Willard*, 32 Minn. 145; *Buffalo v. Webster*, 10 Wend. (N. Y.) 99, 101; *St. Paul v. Smith*, 27 Minn. 364; *St. Louis v. Jackson*, 25 Mo. 37; 2 Cush. (Mass.) 562; *Ash v. People*, 11 Mich. 347; *Davenport v. Kelly*, 7 Iowa, 102; *Bush v. Seabury*, 8 Johns. 418; *State v. Beattie*, 16 Mo. App. 131; *Com. v. Robertson*, 5 Cush. (Mass.) 438. (6) The courts, no doubt, have the power to declare an ordinance invalid because it is unreasonable, but "a clear case should be made out to authorize an inference on the ground of unreasonableness." *St. Louis v. Weber*, 44 Mo. 547-550. "A large and liberal discretion is to be allowed to the municipal authorities is conceded." *City of Cape Girardeau v. Riley*, 72 Mo. 220, 224; *Com. v. Robertson*, 5 Cush. (Mass.) 442.

*Broaddus & Loomis* and *Frank Sheetz*, for the respondent

(1) No exceptions were saved to the admission of testimony as claimed by appellant, and his objections were not specific. *Strauss v. Ayers*, 34 Mo. App. 248. (2) The instruction of plaintiff and appellant was properly refused, because it did not cover the entire case, because it was not based on all the testimony, and lacked testimony to support it, because the ordinance on which it depended was void. City Charter, clause 12, pages 14 and 15; *Railroad v. City of Jacksonville*, 16 Am. Rep. 611; *Clinton v. Phillips*, 11 Am. Rep. 52; *Mayor v. Winfield*, 8 Humph. 767; *Thomas v. Hot Springs*, 36 Am. Rep. 24; *Ward v. Mayor*, 35 Am. Rep. 700; *Robinson v. Mayor*, 34 Am. Dec. 625; *Corrigan v. Gage*, 68 Mo. 541; *City v. Riley*, 72 Mo. 220. (3) Defendant was acting under license for plaintiff and plaintiff is estopped to prosecute him. *Detroit v. Plank Co.*, 37 Mich. 558; *Hall v. State*, 20 Ohio, 8; *Somerville v. O'Neil*, 114 Mass. 353; *Barber v. Roraback*, 36 Mich. 399; *First Church v. Railroad*, 6 Barb. (N. Y.) 313; *Hentzy v. Railroad*, 13 Barb. (N. Y.) 646; *People v. Denslow*, 1 Caines (N. Y.) 177; Cooley's Const. Law, 594. (4) The railroad company gave defendant permission to transact his business on their platform and depot and appellant has no right to interfere (*Napman v. The People*, 19 Mich. 352), and instruction for defendant was properly given.

SMITH, P. J.—The defendant was tried and convicted in the circuit court of Livingston county on a complaint in which it was alleged that he had violated "an ordinance (of the city of Chillicothe) regulating omnibuses and other vehicles and porters and runners." The ordinance provided that "No porter or hotel runner shall, at any time, while engaged in his employment, solicit the custom or patronage of any traveler,

or other person or persons, for any public house, hotel, railroad or public conveyance *at the depot or the platform* of any railroad depot within the corporate limits of the city of Chillicothe, nor make use of any indecent, profane or boisterous language, or be guilty of loud talking, hallooing, or any disorderly conduct, or vex or disturb, or importune strangers, travelers or citizens, or refuse to obey any order or direction of the mayor, city marshal, or any police officer or conservator of the peace of said city which may be given for the preservation of good order, or for the convenience of the public at any railroad termination, depot or other place in said city."

The charter of the city of Chillicothe, section 2, article 4, under which said ordinance was passed, provides that the city council shall "have power by ordinance to license, tax and regulate hackmen, draymen, omnibus drivers, porters and all others pursuing like occupations, with or without vehicles, and to prescribe their compensation and to regulate, license and restrain runners from cars, stages and public houses."

At the trial there was evidence introduced that the defendant was a hotel runner for the Leeper House, and that, on the fifteenth day of March, 1888, at the depot of the Chicago, Milwaukee and St. Paul Railway Company, in the city of Chillicothe, he being the owner of a licensed carriage and omnibus which was running for said Leeper House did, while on said platform of said railway depot, when a passenger train on said railway had arrived, and passengers and travelers were on said platform of said depot, use the following language : " Take this bus for the Leeper House or any part of the city," and repeated it a number of times, and pointing at the time, etc.

The defendant himself testified that, at the time and place mentioned in the complaint, he addressed to persons who got off the train the language which has been stated in the preceding paragraph.

He testified further that the agent or superintendent of the said railway company had drawn a line on said platform and told him and others that they might stand on said platform up to said line and solicit travelers for their hotels or conveyances. He was corroborated by a number of other witnesses. There is other evidence, but it will serve no useful purpose to set forth the same here.

The plaintiff asked the following instruction, which was refused : "If the court, sitting as a jury, find from the evidence, that on or about the fifteenth day of March, 1888, the time mentioned in the complaint in this case, that the defendant, G. G. Brown, was a licensed runner for the Leeper House, and that said Leeper House was a public house, and hotel in the city of Chillicothe, Missouri, and that Brown was licensed as such runner, under and by virtue of the provisions of ordinance number 19, entitled, 'An ordinance regulating omnibuses and other vehicles, and porters and runners,' of the ordinances of the city of Chillicothe, Missouri, and that on or about the said fifteenth day of March, 1888, the said Brown, while engaged in his employment, as a runner for said Leeper House did, in the city of Chillicothe, Missouri, and at and on the platform of the depot of the Chicago, Milwaukee and St. Paul Railway Company, in the said city, solicit and ask the custom and patronage of any traveler, or for any public conveyance employed by and running for said Leeper House, and did ask any traveler or other person to ride in said public conveyance, and go to said Leeper House, then the court will find the defendant guilty, and assess his fine not less than one dollar, nor more than ten dollars, the amount sued for in the complaint."

The defendant asked this instruction, which was given: "If the court finds, from the evidence, that the defendant was on the platform of the Chicago,

Milwaukee and St. Paul Railway Company, at the request, and by the consent of the superintendent of said company, for the purpose of receiving and taking charge of passengers, arriving at said depot, and conveying to their destination within said city or elsewhere, then the finding must be for the defendant; provided, the court further finds that the defendant did not interfere with the rights of the public, and was guilty of no act of violence, created no confusion, and acted in a quiet and peaceable manner."

The judgment was for defendant and to reverse which the plaintiff prosecutes its appeal here.

I. The only question which we have to decide is as to the propriety of the action of the circuit court in refusing the instruction asked by the plaintiff, and in giving that asked by the defendant. If the instruction given for the defendant is correct then that refused for plaintiff is erroneous and *vice versa*.

Unless the ordinance upon which the complaint was based is invalid the defendant's instruction was radically wrong. It will no doubt be conceded that courts have the power to declare an ordinance of a city invalid because of its unreasonableness. But it has been held that to authorize an interference on this ground a clear case should be made out. *City of St. Louis v. Weber*, 44 Mo. 547; *Corrigan v. Gage*, 68 Mo. 544; *Kelly v. Meeks*, 87 Mo. 396.

In *The City of St. Louis v. Speigel*, 8 Mo. App., it was said "that nothing but the clearest case of partial, unfair and unreasonable oppression would warrant an interference on the part of the court in the case of a by-law of a municipal corporation on a subject within the scope of the municipal assembly." We do not understand that there is any question made that the subject of the ordinance in this case is not within the scope of the chartered powers of the plaintiff. Out of that vast reservoir of undefined and undefinable power,

the police power of the state, which may be delegated to a municipality, it would not seem difficult to evolve authority to regulate a business of this kind for the public welfare.

In a state of civil society every man has the right to select and pursue any lawful business he may choose, subject to such reasonable regulation as may be prescribed. If the prosecution of a business or calling threatens damage to the public or other individuals it is a legitimate subject for police regulation to the extent of preventing the evil. Tiedeman on Lim. of Police Power, pp. 195–197.

This power "extends to the protection of the lives, limbs, *comfort and quiet of all persons* and the protection of all property within the city * * * persons and property and subject to all kinds of restraint and operations and in order to secure the general comfort, health and property of the state. *Slaughterhouse cases*, 15 Wall. 36; *Commonwealth v. Alger*, 7 Cush. 84; *Thorp v. Railroad*, 27 Vt. 146.

This power has been exerted to regulate livery stables (*State v. Beattie*, 16 Mo. App. 131), slaughter houses (*Currie v. People*, 82 N. Y. 318), the sale of meat in a particular place within the village limits (*Buffalo v. Webster*, 10 Wend. 99), hacks when at railway depots (*St. Paul v. Smith*, 27 Minn. 364). Railways are public carriers, deriving their powers from the state, and their depots are constructed and maintained not only to facilitate the receipt and discharge of freight and passengers but for the comfort and convenience of arriving and departing passengers and of the public generally having business with their station agents, and therefore any exercise of the police power by the state or any political subdivision thereof which imposes upon them, and those having business at their depots, such regulations, as tend to prevent nuisances and other annoyances thereat to the public are not to be judicially condemned as unreasonable and invalid.

The only restriction upon the authorized exercise of this power is that it must be reasonable.

This is a judicial question. It must not be understood that the lawmaking power can impose such restraints upon the exercise of a pursuit in which one has a right at common law to engage as would interdict or prohibit the same, for that would be unreasonable. The power for regulating is one thing and that of prohibition is another. The ordinance in question is not prohibitory, it is simply regulative. It prohibits hackmen and porters who are authorized under a license to pursue their business from soliciting custom and trade at the railway depots within the city. This, in the light of the authorities just cited, is not an unreasonable interference with their business. It is a matter of almost common experience that one of the greatest annoyances, to which the tired and wearied railway passenger is subject on his arrival at the depot of some of our smaller western towns and cities is the intrusive attention and solicitation of these pestiferous and irrepressible hackmen and hotel porters. This ordinance has for its object the partial repression of their performances while plying their business at railway stations and to thus afford the public some immunity from their obstreperous and instrusive conduct.

The beneficent provisions of such an ordinance, we think, should be upheld. We are not aware of any principle which authorized said railroad company to suspend at its depot the operation of said municipal ordinance. No such power resides in any railway corporation doing business in this state. The instruction given for the defendant as well as the evidence upon which it was based was improper and should have been refused; and that asked by the plaintiff should have been given.

It may be proper to say further that the case of *Napman v. People*, 19 Mich. 352, which is greatly

relied on by the defendant, lends no support to his contention. The ordinance in that case prohibited runners from approaching within twenty feet of the cars, etc., while the one in question here contains no such prohibition. The latter does not interdict them from entering upon the depot and approaching the cars, but simply forbids them to solicit there. The cases, therefore, are quite distinguishable.

There are a number of points urged upon our consideration by the defendant, but, as they do not properly arise on the record before us, we are not at liberty to notice them. We have considered and passed upon the points raised by the appeal and that is as far as we are permitted to go in a case of this kind.

The judgment must be reversed and the cause remanded. All concur.