CITY OF COLORADO SPRINGS, PLAINTIFF IN ERROR, v.
SMITH, DEFENDANT IN ERROR.

MUNICIPAL ORDINANCE.

A city ordinance provided that hotel runners, stage and omnibus driv-
ers, hackmen and expressmen plying their respective vocations at
any passenger depot of any railroad in such city, on the arrival and
departure of trains, should occupy no part of the depot grounds or
premises except that portion allotted and designated to them by
the station agent of such depot.   *Held :*

Such ordinance is not to be construed as giving a railroad company the
right to exclude from its depot grounds or premises any person
lawfully engaged in serving the traveling public either with or with-
out vehicles, nor to confer upon such company the power to grant
exclusive rights and privileges to persons engaged in such occupa-
tions; but such ordinance, being authorized by statute, is to be
upheld as a reasonable regulation to promote the convenience of
the traveling public and to prevent disorder at railway stations.

*Error to the County Court of El Paso County.*

ACTION for the violation of city ordinance. Judgment in favor of defendant Smith. The city brings the cause to this court by writ of error.

ORDINANCE.

"Section 1. Hotel runners, stage and omnibus drivers, hackmen and expressmen, in plying their respective vocations at any passenger depot of any railroad in this city, upon the arrival and departure of trains, shall occupy no part of the depot grounds or buildings or the platform thereof, except that portion allotted and designated to them by the station agent of such depot, and loud and boisterous holloaing in soliciting for patronage at such depots is forbidden.

" Sec. 2. Any person violating this ordinance shall, upon conviction thereof, be fined not less than five nor more than twenty-five dollars for each offense. And it shall be the duty of the city marshal in person to attend or to cause a policeman to attend, in his discretion, at the several railroad depots of this city, upon the arrival and departure of passenger trains, and to see that the provisions of this ordinance are observed."

EVIDENCE.

The following is in substance all the evidence introduced at the trial in the county court:

The agent of the Denver & Rio Grande Railroad Company at the city of Colorado Springs testified that he had charge of the company's business, its depot and depot grounds, at that city ; that as such agent, he had, before the time of this controversy, assigned places at the said depot platform to such of the omnibus men, hackmen, carriage and hotel runners plying their vocations about said depot grounds as had applied to him for such assignment, including Pitts & Wolley (being the Colorado Springs Transfer Company) ; that he had not assigned a place to the defendant, because defendant had not applied to him to have a place assigned to him ; that

he had allotted to no one, except Pitts & Wolley; no others had applied.

A policeman of the plaintiff city testified that his duty was to attend at the Denver & Rio Grande railroad depot in said city, and to see that order is there observed, and that the rules and regulations of said depot and the ordinances of said city, that have a bearing upon the conduct of omnibusmen, hackmen, expressmen and hotel runners at that depot, are observed. That at the time complained of defendant driving a hack or carriage backed up to the said railroad depot platform, into and occupied a place there that had theretofore been assigned, by the said railroad company's agent, to Pitts & Wolley, for their hacks and carriages; that said Pitts & Wolley then demanded to be allowed to occupy the said place with their carriages or hacks, and said defendant refused to drive out of said place and to allow said Pitts & Wolley to occupy the place; that witness then as such policeman told said Smith that the place his carriage then occupied had been designated for and assigned by the railroad company's agent to Pitts & Wolley, for their carriages or hacks, and that they wanted the place, and that defendant must drive out and let them occupy it; that said Smith refused to drive out and give up the place, but remained there at the incoming of the train then nearly due for the purpose of soliciting patronage of the incoming passengers of said train for his carriage. That thereupon witness made, or caused to be made, the complaint against him for which he is now on trial.

Messrs. WOLCOTT & VAILE and Mr. H. F. MAY, for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

This cause was submitted *ex parte* upon the brief and argument of counsel for plaintiff. This court has uniformly held

that a municipal corporation is entitled to have judgments in this class of cases reviewed by writ of error. *City of Greeley v. Hamman*, 12 Colo. 94; *City of Durango v. Reinsberg*, 16 Colo. 327.

The evidence clearly shows that defendant violated the terms of the ordinance. The only question, therefore, necessary to be considered is : Was the ordinance valid?

The following provisions of the Towns and Cities Act are relied on to sustain the validity of the ordinance, Gen. Statutes, 1883, § 3312:

" The city council and board of trustees in towns shall have the following powers :

\*     \*     \*     \*     \*     \*     \*     \*

" *Fourteenth*—To license, tax and regulate hackmen, omnibus drivers, carters, cabmen, porters, expressmen, and all others pursuing like occupations, and to prescribe the compensation.

" *Fifteenth*—To license, regulate, tax and restrain runners for stages, cars, public houses, or other things or persons.

\*     \*     \*     \*     \*     \*     \*     \*

" *Thirty-sixth*—To regulate the police of the city or town, and pass and enforce all necessary police ordinances.

\*     \*     \*     \*     \*     \*     \*     \*

" *Sixty-sixth*—To pass all ordinances, rules, and make all regulations proper or necessary to carry into effect the powers granted to cities or towns, with such fines and penalties as the council or board of trustees shall deem proper; *Provided*, no fine or penalty shall exceed three hundred (300) dollars, and no imprisonment shall exceed ninety days for one offense." See, also, 2 Mills' An. Stats., p. 2258, *et seq.*

The ordinance in question is not to be construed as giving a railroad company the right to exclude from its depot grounds or premises any person lawfully engaged in serving the traveling public, either with or without vehicles. Such persons are entitled to access to the depot platform or station house under reasonable regulations, provided they conduct themselves and pursue their vocations in a peaceable and orderly

manner. The ordinance is to be construed as a regulation to promote the convenience of the traveling public, and to prevent disorder at railway stations, and not as an ordinance conferring upon railroad companies the power to grant to certain runners, drivers, hackmen, or expressmen, exclusive rights and privileges, and thus unjustly discriminate between persons engaged in such occupations. From the evidence introduced it would seem that this was the construction placed upon the ordinance by the employees of the railroad company, as well as by the different officers of the city. Thus construed, we see no reason why the ordinance should not have been enforced. *Cole v. Rowen*, 88 Mich. 219; *McConnell v. Pedigo*, 18 S. W. Rep. (Ky.) 15; *Montana Un. Ry. Co. v. Langlois et al.*, (Mont.) 24 Pac. Rep. 209; *Cravens v. Rodgers*, 14 S. W. Rep. (Mo.) 106; *Keilkopf v. City of Denver, ante*, 325; Horr & Bemis on Ordinances, § 128 *et seq.;* also, § 188 *et seq.*

The evidence shows that no place had been allotted by the station agent to defendant, because he had never applied for a place for his hack; that defendant insisted upon occupying a place which had been assigned to other parties; and for aught that appears in this record, there were other convenient places upon the depot grounds which defendant could have secured for the purpose of conducting his business. If it had been shown that the station agent had refused to allot space to defendant, or had acted unfairly or unreasonably in the matter of allotting space, so as to give unfair advantage to others to the manifest detriment of defendant, a different case would be presented. But upon the record before us there seems to be no reason for defendant's refusal to comply with the ordinance.

The judgment of the county court is accordingly reversed, and the cause remanded.

*Reversed.*