WELCH, APPELLANT, *v.* DEAN ET AL., RESPONDENTS.

(No. 3,385.)

(Submitted May 26, 1914. Decided June 6, 1914.)

[141 Pac. 548.]

*Horticulture — Inspection of Nursery Stock — License Fees — State Horticulturalist—Powers—Interstate Commerce—Regulation by State—Police Power.*

Interstate Commerce—Congressional Regulation Exclusive, When.
   1. Under section 8, Article I, of the United States Constitution, granting to Congress the power to regulate interstate commerce, to the extent that the subjects of the commercial power are in their nature national or admit of only one uniform system or plan of regulation, congressional legislation alone is ·demanded, and nonaction by Congress is tantamount to a declaration that they shall remain free from interference by state legislation.

   [As to constitutionality of state regulation of interstate commerce, see note in 27 Am. St. Rep. 547; 78 Am. St. Rep. 251.]

Same—Power of States—Police Power.
   2. Under the police power reserved to themselves by the states, they may rightfully enforce any reasonable regulation against one engaged in interstate commerce, when he transacts his business in this state, even though such regulation interferes indirectly with such commerce.

Same—Police Regulations—Limit of Power of States.
   3. Under the guise of enforcing police regulations, the state may not exact impossible conditions to the right to engage in interstate commerce, or impose burdens which amount directly to a regulation ·of it.

State Horticulturalist—Powers.
   4. The state horticulturalist being a creature of statute, the extent of his authority is measured by the statute.

Same—Certificate of Inspection—Imperative Duty to Furnish.
   5. Section 1924, Revised Codes, as amended by Chapter 121, Laws of 1911, imposes upon the state horticulturalist the imperative duty to attach his certificate of inspection to each lot or bill of nursery stock,

if found free from disease or pests, leaving him no discretion to refuse to do so where the shipper omits to take out a license and provide a bond as required by amended sections 1935 and 1936.

[As to state statute requiring preliminary inspection of importations as attempted regulation of interstate commerce, see note in 14 Ann. Cas. 1103.]

Same—Statutes—Conditions Impossible of Performance—Effect.

6. *Held*, that the district court erred in denying mandatory relief to a shipper of nursery stock from another state, commanding the state horticulturalist to attach his certificate of inspection to a shipment inspected by him and found free from disease, since the requirement of section 1935 above, for the payment of a license fee as a condition precedent to doing business in this state, was impossible of performance, the statute not making any provision for procuring the license.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

Suit by E. S. Welch against M. L. Dean, state horticulturalist, and another. Judgment for defendants, and plaintiff appeals. Reversed.

*Messrs. Johnston & Coleman,* for Appellant, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

The bond and license fee required is a burden upon interstate commerce of which Congress has exclusive control. While different state courts hold different views as to the right of states to burden interstate commerce in various ways, the supreme court of the United States has never varied its position in the matter. One of the earliest cases on this point, that of *Brown* v. *Maryland,* 25 U. S. 419, 6 L. Ed. 678, holding that a statute of Maryland requiring every person importing certain commodities into that state to procure a license at a cost of $25 and subjecting them, upon failure to do so, to certain fines and penalties, was void because repugnant to the two provisions of the Constitution (1) forbidding a state to lay any impost or duty on imports or exports, and (2) that Congress shall have the power to regulate commerce with foreign states, among the several states and with the Indian tribes. The case of *American Fertilizer Co.* v. *Board of Agriculture,* 43 Fed. 609, 11 L. R. A. 179, is another good case directly in point. (See, also, *Stoutenberg* v. *Hennick,* 129 U. S. 141, 32 L. Ed. 638, 9 Sup. Ct.

Rep. 256; *Kehrer* v. *Stewart,* 197 U. S. 60, 49 L. Ed. 663, 25 Sup. Ct. Rep. 403; *Lyng* v. *Michigan,* 135 U. S. 161, 34 L. Ed. 150, 10 Sup. Ct. Rep. 725; *Crutcher* v. *Kentucky,* 141 U. S. 47, 35 L. Ed. 649, 11 Sup. Ct. Rep. 851; *Dozier* v. *Alabama,* 218 U. S. 124, 54 L. Ed. 965, 30 Sup. Ct. Rep. 649, 28 L. R. A. (n. s.) 264; *Ames* v. *People,* 25 Colo. 508, 55 Pac. 725; *State* v. *Glasby,* 50 Wash. 598, 21 L. R. A. (n. s.) 797, 97 Pac. 735; *Smith* v. *Farr,* 46 Colo. 364, 104 Pac. 401; *Eaton* v. *People,* 46 Colo. 361, 104 Pac. 407; *Asher* v. *Texas,* 128 U. S. 129, 32 L. Ed. 368, 9 Sup. Ct. Rep. 1; *McCall* v. *California,* 136 U. S. 104.)

*Mr. D. M. Kelly,* Attorney General, and *Mr. J. H. Alvord,* Assistant Attorney General, for Respondents, submitted a brief.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

For several years last past, E. S. Welch has been engaged in raising nursery stock for sale at Shenandoah, Iowa, where he resides. He has never kept any of his stock in this state, but has transacted a considerable business here by filling mail orders obtained directly from his customers, or from his agents who solicited the orders in this state. All orders were filled by shipping the goods directly from the nursery in Iowa to the customers in Montana. About April 1, 1913, Welch received by mail an order from O. S. Chilcott for a carload of nursery stock, and immediately filled it by shipping the goods to Chilcott. He also notified the state horticulturalist and fruit inspector, in order that the goods might be inspected. R. E. Bancroft inspected the shipment upon its arrival at Billings and found the goods in healthy condition and free from disease, insects or fruit pests, but acting upon the advice of the state horticulturalist, as well as upon his own judgment, declined to issue any certificates of inspection, solely upon the ground that Welch had not obtained a license to engage in the business of selling trees, plants and other nursery stock in this state and had not filed with the state horticulturalist the bond required by the statutes of this state.

Thereupon Welch instituted this suit and sought to restrain the state horticulturalist and Inspector Bancroft from interfering with his business, and, by mandatory injunction, to require them to furnish the proper certificates of inspection. A temporary injunction was issued, but thereafter, upon motion of defendants, it was dissolved, and the plaintiff appealed.

In his complaint plaintiff alleges that he has at all times been ready, able and willing to comply with all the laws of this state with reference to the inspection of nursery stock, and, while this allegation is denied in the answer, it was made to appear, upon the hearing of the motion to dissolve, that the only reason for refusing the certificates of inspection was that plaintiff had not procured a license to sell nursery stock in this state and had not furnished to the state horticulturalist a bond.

The statutes relating to the horticultural industry· are found in sections 1917–1947, Revised Codes, with certain amendments made by Chapter 121 of the Laws of 1911. Sections 1935 and 1936, as in the amended Act, read as follows:

"Sec. 1935. No person, firm or corporation shall engage or continue in the business of selling within the state, or importing fruit trees, plants, or nursery stock into the state, without first having obtained a license to do business in this state, as in this Act provided.

"Sec. 1936. Any person, firm or corporation may obtain a license to engage in the business of selling fruit trees, plants or nursery stock in this state, upon the payment of the sum of $25, and by filing with the state horticulturalist a bond, with sureties, in the sum of $1,000, conditioned that the principal will faithfully obey the laws of the state of Montana," *etc.*

Section 1924 provides for the inspection of nursery stock sold or to be delivered in this state, and for certificates of inspection to be attached to the articles constituting the consignment. Sections 1928 and 1934 provide penalties for delivering any such stock without the certificates of inspection; and section 1939 likewise attaches a penalty to the Act of receiving or using such stock without first notifying the inspector and affording him an opportunity to examine and, if necessary, fumigate the same.

Section 8, Article I, of the Constitution of the United States, declares: "The Congress shall have power * * * to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." To the extent that the subjects of the commercial power are in their nature national or [1] admit of only one uniform system or plan of regulation, congressional legislation alone is demanded (*Cooley* v. *Board of Wardens,* 12 How. 299, 13 L. Ed. 996) ; and, with reference to such subjects, nonaction by the Congress is tantamount to a declaration that they shall remain free and untrammeled from interference by state legislation. (*Western Union Tel. Co.* v. *Call Pub. Co.,* 181 U. S. 92, 45 L. Ed. 765, 21 Sup. Ct. Rep. 561.) "When the subject matter is the sale of a well-recognized article of commerce, such as vines, trees, or shrubs, or any other well-known article of commerce, the product of another state, the subject is in its nature national, susceptible of regulation by rules uniform throughout the nation, and obviously susceptible of wise regulation by such uniform national rules only; and in such a case there can, of necessity, be only one system or plan of regulation, and that Congress alone can prescribe." (*In re Schechter* (C. C.), 63 Fed. 695.) The several states have reserved to themselves the police power, and any reasonable regu- [2] lation exercised under that power may be enforced against one engaged in interstate commerce whenever he transacts his business in this state, even though it might interfere indirectly with such commerce. (*Austin* v. *Tennessee,* 179 U. S. 343, 45 L. Ed. 224, 21 Sup. Ct. Rep. 132.) But, under the guise of [3] enforcing police regulations, the state may not exact impossible conditions to the right to engage in such business or impose burdens which amount directly to a regulation of it.

In the present instance, the inspector was in error in refusing the plaintiff proper certificates of inspection, for two reasons:

1. The inspector is a creature of statute, and the measure [4, 5] of his authority must be found in the statute. Section 1924 makes it his duty to attach a certificate of inspection to each lot or bill of trees, grafts, plants, scions, *etc.,* if the same be found free from any and all diseases and pests, as designated

by the state board of horticulture. In this he has no discretion to exercise. His duty is imperative. The failure or refusal of plaintiff to take out a license or provide a bond furnished no excuse whatever for the inspector's refusal to grant him proper certificates of inspection. In other words, the failure of plaintiff to obey the law, if such it was, did not justify the inspector in violating it.

2. But the inspector was in error for the stronger reason: The statute above, so far as it relates to a horticulture license, is one [6] of the curiosities of the law. Section 1935 forbids anyone engaging in the business of selling fruit trees or other nursery stock in this state or importing them into this state, even for his own use and to the extent of a single dollar's worth, without having first obtained a license therefor and paid a $25 license fee; and yet the legislature neglected to make any provision whatever for issuing the license. However great the desire of this plaintiff may have been to comply with the mandate of that section, he could not have done so, for no one is authorized to provide the license, to sign it, or to issue it. No one has authority to accept the $25 fee, and there is not even a suggestion as to what disposition is to be made of the fee if collected. It is perfectly apparent that it was not the legislative intention to control this matter by the general license statute (Chapter XIII, Part III, Title XII, Rev. Codes), for that statute deals only with the classes of licenses enumerated therein, and the horticulture license is not one of them.

If the bond mentioned in section 1936 was required as an independent act, serious questions as to the sufficiency and validity of the statute governing it might arise; but apparently it is exacted only as one step in the process of procuring a license, and must stand or fall with the license.

Since there is not any provision of law under which the plaintiff could have procured a license, to require him to have one as a condition precedent to his right to have proper certificates of inspection is tantamount to denying him the right to do business in this state altogether, even though his stock meets all the requirements imposed by law or the regulations of the state

board of horticulture.   Under this view it is unnecessary for us at this time to consider the question of constitutional law presented by appellant.

The inspector was without legal excuse for refusing the certificates, and he should have been compelled to discharge the plain duty imposed upon him by section 1924, above.   In refusing that relief, the trial court erred, and its order is reversed.

*Reversed.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.