CITY OF BUTTE, RESPONDENT, *v.* ROBERTS, APPELLANT.

(No. 7,081.)

(Submitted May 27, 1933. Decided June 16, 1933.)

[23 Pac. (2d) 243.]

Judgment affirmed.

*Messrs. Walker & Walker* and *Mr. Harlow Pease,* for appellant, submitted a brief; *Mr. Pease* argued the cause orally.

*Mr. Herbert M. Bingham* and *Mr. Edwin M. Lamb,* for Respondent, submitted a brief; *Mr. Lamb* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant was found guilty of violating a city ordinance of the city of Butte. The action in the district court was on appeal from the justice court and by agreement was tried to the court without a jury. From the judgment imposing a fine, defendant appealed.

The ordinance involved was passed in November, 1931, and provides: ''Section 1. That hotel runners, stage and omnibus drivers, hackmen, taxicab drivers and expressmen operating vehicles for the transportation of passengers, baggage or express, and plying their respective vocations at any passenger depot or any railroad station in the city of Butte, on the arrival and departure of trains, shall occupy no part of the depot grounds of railroad premises while soliciting baggage, express or passengers, but that all such persons shall occupy a position by the side of their vehicle and along the curb line of any public street fronting such depot property.''

The facts are that defendant was a taxicab driver employed by the Central Cab & Transfer Company, a domestic corporation engaged in operating a transfer and taxicab business in the city of Butte. That company had written contracts with four railroad companies having stations in Butte. The contracts are similar but not identical. All provide that the transfer company shall furnish an adequate number of vehicles and drivers to handle passenger traffic at the respective railway stations. At least one of the contracts provides that the transfer company shall accommodate and serve interline passengers possessing paid transportation from one Butte passenger station to another. The contracts give the agents of the transfer company the exclusive right to enter the depot, trains and other property of the respective railway companies for the purpose of discharging the duties under the contracts. The contracts stipulate for the payment to the respective railway companies by the transfer company of a stated sum per month.

One provides that the transfer company shall receive fifty cents per passenger for handling interline passengers and their baggage, the fifty cents being collected from the passenger by the railway company at the time of selling the transportation ticket. Other provisions of the contracts need not be pointed out in detail.

By stipulation it was shown that defendant solicited passengers while within the passenger depot of the Great Northern Railway Company at Butte, and that he did not, while so doing, keep a position by the side of his vehicle and along the curb line of the public street fronting the depot property where the vehicle was stationed; that all of the acts done by him while soliciting passengers were in the course of his employment and by the direction of his employer, the transfer company.

There was evidence that four or five men are required to meet the passengers from incoming trains to determine which of them hold transfer coupons. It appears that when the railway company sells a ticket to a passenger passing through Butte necessitating a change from one depot to another, a transfer coupon is furnished to the passenger upon the payment of transfer charges to the agent selling the ticket. When the transfer company transports such an interline passenger, it receives from the passenger this coupon which is thereafter presented to the railway company for payment. If an interline passenger is not given attention by an agent of the transfer company, it sometimes happens that the passenger employs some other taxicab driver to carry him from one depot to another and is charged therefor. This results in the passenger being twice charged for the transfer service, while the transfer company must in such circumstances carry the passenger's baggage from one depot to another without charge, since, not having transported the passenger to whom the baggage belonged and obtained from him the coupon, it is unable to present it to the railway company for payment.

It is shown that if the ordinance is complied with, the transfer company will be obliged to employ a crew of four or five

men, other than drivers of the taxicabs, to solicit and handle the passengers; such a crew, under the circumstances, would be employed only ten or fifteen minutes during the arrival and departure of the trains, and for this period of time the drivers would be idle, and that compliance with the ordinance in this respect would destroy the profits of the transfer company and compel it to operate at a loss. The facts are undisputed.

Defendant's contention is that the ordinance is unconstitutional as being in conflict with sections 11 and 27, Article III, of the Montana Constitution, and with section 10 of Article I and the Fourteenth Amendment of the Constitution of the United States; that it interferes with interstate commerce and thus encroaches upon the prerogatives of Congress as granted by section 8 of Article I of the federal Constitution.

The questions before us are: (1) Is the ordinance invalid because in conflict with the due process clause of the state and federal Constitutions? (2) Does it impair the obligation of the contracts referred to, contrary to the state and federal Constitutions? and (3) Is it an unlawful interference with interstate commerce?

The answers to these questions depend upon whether the ordinance is reasonably necessary to promote the public health, safety or comfort so as to fall within the legitimate exercise of the police power. If the ordinance can reasonably be said to be a proper exercise of the police power, then it is of no consequence that it affects property rights or rights based upon existing contracts, for, as we shall see, property rights and contracts are subject to and must yield to the common welfare.

The courts have divided on the question whether an ordinance such as the one before us can be sustained as within the sphere of the police power of a municipality. The leading case condemning such an ordinance is that of *Napman* v. *People,* 19 Mich. 352. This case was followed by the supreme court of Georgia, in *Cosgrove* v. *City Council of Augusta,* 103 Ga. 835,

31 S. E. 445, 68 Am. St. Rep. 149, 42 L. R. A. 711. But the decided weight of authority sustains the right of a city to pass such an ordinance for the convenience and comfort of travelers on railroads. (*Chillicothe* v. *Brown*, 38 Mo. App. 609; *City of Laddonia* v. *Poor*, 73 Mo. App. 465; *City of Seattle* v. *Hurst*, 50 Wash. 424, 97 Pac. 454, 18 L. R. A. (n. s.) 169; *Seattle T. & T. Co.* v. *City of Seattle*, 86 Wash. 594, 150 Pac. 1134; *Emerson* v. *Town of McNeil*, 84 Ark. 552, 106 S. W. 479, 15 L. R. A. (n. s.) 715; *Williams* v. *State of Arkansas*, 85 Ark. 464, 108 S. W. 838, 122 Am. St. Rep. 47, 26 L. R. A. (n. s.) 482; affirmed in 217 U. S. 79, 30 Sup. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865; *Taylor* v. *Moore*, 99 Ark. 412, 138 S. W. 634; *Baird* v. *Bray*, 125 Ark. 511, 189 S. W. 657; *Lindsay* v. *Mayor of Anniston*, 104 Ala. 257, 16 So. 545, 53 Am. St. Rep. 44, 27 L. R. A. 436; *In re Application of Barmore*, 174 Cal. 286, 163 Pac. 50, 52, L. R. A. 1917D, 688; 3 McQuillin on Municipal Corporations, 2d ed., sec. 1000; compare, also, *City of Colorado Springs* v. *Smith*, 19 Colo. 554, 36 Pac. 540, and *State* v. *Kern*, 130 Minn. 191, 153 N. W. 311.)

What was said in the *Barmore Case*, supra, has equal application here. The court there said: "It is of no importance in this inquiry that the Los Angeles Transfer Company had a contract with the Southern Pacific Railroad Company under which its agents were authorized to solicit in the depot of the railroad company. If the city was authorized, in the exercise of its police power, to prohibit solicitation within the depot, its right to so legislate could, of course, not be limited by any contract made between private parties. 'All contracts are subject to this power, the exercise of which is neither abridged nor delayed by reason of existing contracts.'"

The power of the city "to license and regulate hackney carriages, cars, omnibuses, wagons, and drays" is expressly granted by subdivision 54 of section 5039, Revised Codes of 1921. The ordinance must be sustained as a legitimate police measure.

The ordinance being a reasonable police regulation, its validity is unaffected by the fact that it indirectly interferes with interstate commerce carried on partially in this state. (*Welch* v. *Dean*, 49 Mont. 263, 141 Pac. 548.)

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATHEWS, STEWART and ANDERSON concur.