THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROBERT M. HUMPHREYS, Defendant.*

City Court of Utica, September 17, 1947.

*Milton Nelson* for defendant.

*J. Herbert Gilroy, Corporation Counsel* (*Harold H. Hymes* of counsel), for plaintiff.

* See, also, *People* v. *Swald*, 190 Misc. 239, and *New York Central R. R. Co.* v. *Arthlia*, 190 Misc. 555.— [REP.

*W. Roger Pratt, amicus curiæ.*

WALSH, J.  This is a motion prior to trial to dismiss an information charging defendant with violating subdivision a of section 21 of Ordinance No. 596 of 1945, as amended by Ordinance No. 335 of 1946 of the City of Utica, commonly known as the Taxicab Ordinance.  The information alleges that defendant solicited a passenger for his taxicab within the Union Station and at a point more than ten feet from his cab.

Subdivision a of section 21 of the Ordinance provides: "No taxicab driver shall solicit passengers while cruising, nor shall any taxicab driver leave his cab on any stand for the purpose of soliciting except at the New York Central Railroad Station where a driver may solicit 10 ft. from his car."

The defendant maintains and the People concede for the purpose of this argument that defendant was an employee of the Black & White Taxi Company, which has a contract with the New York Central Railroad Company granting to it and its employees an exclusive privilege to solicit passengers for its cabs.  The defendant also maintains that said solicitation occurred on private property and that the Black & White Taxi Company had permission in accordance with subdivision b of section 21 of the Taxicab Ordinance to solicit on the private property of the railroad.  It is conceded by defendant however that such written permission was not filed with the Commissioner of Public Safety until several days after the arrest and several days before the reargument of the motion.

Defendant contends, as a matter of law, that the New York Central Railroad Company has a right to grant an exclusive franchise to the Black & White Taxi Company; that insofar as subdivision a of section 21 of the Ordinance prohibits drivers from soliciting passengers more than ten feet from their cabs, it does not apply to defendant who was soliciting passengers on private property with permission of the owner; and that if such section does apply to defendant, it is unconstitutional in that it deprives a person of private property or a property right without due process of law.

Counsel for the People argues that the ordinance does not interfere with private property or a property right because subdivision b of section 21 of the Ordinance provides for solicitation on private property provided written permission is filed with the Commissioner of Public Safety.

Counsel who appears as *amicus curiæ* for a number of the independent taxi owners argues that the ordinance should be equally applicable to all or to none; that unless such ordinance

applies to all, it constitutes class legislation and denies to the independent owners the equal protection of the laws by creating a preference and a monopoly in favor of one company.

While the power of this court " to declare a law unconstitutional should be exercised cautiously * * * and avoided if possible * * * " (*Garcia* v. *Pan American Airways*, 183 Misc. 258, 259–260), the question of the constitutionality of subdivision a of section 21 of the Ordinance has been squarely presented to this court for decision and if it appears clearly and without the slightest doubt that the section is unconstitutional, then it is our duty to so declare.

Because of the importance of this decision, a careful study of the councilmanic and judicial history of the problem of taxicabs at the Union Station should be made. Contrary to popular belief it is not a recent problem.

The New York Central Railroad Station known as the " Union Station " is without question private property owned and controlled by the New York Central Railroad Company. It has a frontage on Main Street of 200 feet; the sidewalk in front of the Union Station on Main Street is 15 feet in width. On the west side of the Union Station is a public alley 25 feet in width with a 15-foot concrete sidewalk on the westerly side of the station. (*Wurz* v. *Miller,* Sup. Ct., Oneida Co., Dec. 20, 1932, by Dowling, J.)

In 1922, the Common Council enacted a so-called " taxicab " ordinance, section 7 of which established " public " stands in the city and provided that the stand at the Union Station should not be occupied by more than five cabs at a time, said stand to be located on Main Street; and no driver should solicit passengers at any point more than ten feet away from his vehicle. (Ordinance No. 328 of 1922.)

On July 25, 1928, the New York Central Railroad Company granted to one Achille Perretta the exclusive privilege of operating taxicabs at the Union Station. As Mr. Justice Dowling stated in his opinion: " Perretta's lease does not allocate any precise place for the standing of his taxicabs. Since the inception of his lease, he had parked them in front of the westerly entrance to said Station, adjacent to the sidewalk. His servants have the exclusive right to solicit fares in the Station. The privilege given to Perretta by the Central had been enjoyed by other taxicab operators for many years before 1928."

The so-called independent taxicab operators were not allowed to solicit in the Union Station but apparently enjoyed the privilege of soliciting fares from the public in front of the station.

·· On June 17, 1931, the Common Council adopted an ordinance, section 8 of which provided for " general " cab stands with the permission of the owners of the abutting property. Whether or not the New York Central Railroad refused to approve the " general " stand on Main Street is unknown to the court, but in the spring of 1931, the Commissioner of Public Safety established a general taxicab stand on First Street, and all the taxicab operators except Mr. Perretta were ordered off Main Street to the new location. Mr. Justice Dowling in his opinion observed that " This location hides their vehicles from persons leaving the Station by the westerly and two southerly exits."

· In a litigation involving one of the independent operators as plaintiff and the Commissioner of Public Safety as defendant, Hon. J. B. M. Stevens, Official Referee of the Supreme Court, held (Oct. 22, 1931) that the Ordinance of 1931 was unconstitutional.

On February 19, 1932, the Common Council adopted an ordinance (Ordinance No. 328 of 1922, as amd.) by which a taxicab stand was authorized at the Union Station to " be located on the easterly side of said Union Station, on the westerly side of First Street, northerly on Main St." It was further provided that no driver should " solicit passengers at any point more than ten feet away from his vehicle." Mr. Justice Dowling in his opinion remarks that, " From the center of the westerly door on the south side of the Station, to the southeast corner thereof, is 137 ft. The effect of this provision was to compel taxi drivers to solicit fares at a distance of 127 ft."

. Several of the independent operators were arrested in 1932 and arraigned in this court charged with violating the ordinance and one of them, Joseph Wurz, commenced an action against the Commissioner of Public Safety (*Wurz* v. *Miller, supra*). Mr. Justice .Dowling dismissed the complaint, holding that the ordinance was reasonable and valid.

·On December 5, 1945, the Common Council adopted the ordinance which is here questioned.

Defendant's first contention that the New York Central Railroad Company has a right to. grant an exclusive franchise to the Black & White Taxi Company is unquestionably the law. The dominion which a railroad company has over its depot grounds is no less complete or exclusive than that which any owner of property has over his own property. In *Barney* v. *Oyster Bay & Huntington Steamboat Co.* (67 N. Y. 301 [1876]) the highest court of the State stated (p. 303, per Andrews, J.): " * * * a carrier may establish, for the convenience of pas-

sengers and for his own profit, on his car or vessel, an agency for the delivery of baggage of passengers, and exclude all other persons from entering, to solicit or receive orders from passengers, in competition with the agency established by him. This is in no just sense a monopoly. It is simply saving to the carrier a legitimate advantage which his position and business gives him.''

This proposition of law found favor in the case of *Brown* v. *New York Central & H. R. R. R. Co.* (75 Hun 355, appeal dismissed 151 N. Y. 674 [1894]) in which the General Term, Fifth Department, ruled on the case where the defendant railroad company had a written agreement with the Miller & Brundage Coach Company where for a valuable consideration it gave that company the exclusive right to have its agents upon its trains to solicit business and also to drive its carriages into its property to receive passengers. Plaintiff in that case was a so-called `` independent '' operator who placed his carriages on the street near the depot and solicited passengers. Defendant railroad company refused to allow plaintiff to go upon its trains or to enter the yard reserved for Miller & Brundage and plaintiff sought an injunction on the ground that such preference violated section 54 of the Railroad Law. The court denied the injunction and stated (pp. 360, 362)': `` If the plaintiff be right in his contention, it logically follows that any one wishing to engage in the business of selling papers, pamphlets, stationery, etc., has the right, if he can find an unoccupied corner in a railroad depot, to insist upon occupying it for his business, if any other person shall be occupying a place in said depot for a like business by permission of the company. * * * The contract between the defendant and the Miller & Brundage Company is not against public policy.''

Passing to the second contention of defendant that the City of Utica may not enact legislation which interferes with the lawful right of the New York Central Railroad Company and the Black & White Taxi Company to have such an exclusive arrangement, it appears that defendant's contention is sound in law.

Defendant is a licensed cab driver who was in fact soliciting passengers more than ten feet from his cab in apparent violation of the ordinance.

In the case of *Cosgrove* v. *City Council of Augusta* (103 Ga. 835) the Supreme Court of Georgia held that an ordinance which absolutely prohibited hackmen and cabmen from entering, with the owner's consent, a passenger depot to solicit customers was void.

The case of *Napman* v. *People* (19 Mich. 352), decided by the Supreme Court of Michigan in 1869, is applicable to the case at bar. In that case, there was an agreement between the Detroit & Milwaukee Railroad Company and the Omnibus Company by the terms of which the latter company's drivers and agents alone were authorized and permitted to go within the depot. An ordinance of the City of Detroit provided that no driver, etc., " * * * shall, on the arrival of any steamboat, or railroad cars in the city of Detroit, for a period of fifteen minutes thereafter, go upon or approach within twenty feet of the wharf or depot * * *." Defendant Napman solicited passengers within the prohibited time and place as an agent of the Omnibus Company. He was found guilty on trial and on appeal, his conviction was reversed by the Supreme Court of Michigan with the following opinion (pp. 355–356) : " The main question, however, calls for a decision upon the validity of a prohibition which would prevent railroad companies from making such arrangements as are found by the Recorder to have been entered into here. We have no difficulty in deciding that the city cannot lawfully interfere to prohibit such arrangements. The acts done are done upon the private premises of the railroad companies, over which the city can have no general control; and we think there is no reason why these companies, in their character of carriers of passengers, may not properly make such arrangements as will facilitate their reaching their destination anywhere in the city as well as at the end of the track in the depot. Passengers, who are strangers in the city, have no means of knowing the character of the runners they may encounter outside of the depot, and if they can deal without confusion, and at their leisure, with responsible agents it will be much more convenient and safe than to compel them to select from among strangers and in the noise and bustle attendant on the arrival of the cars. Such contracts of employment, made in the cars and on the premises by the companies cannot be lawfully restrained by the city authorities. No driver can without permission go, of right, on the private property of the railroad company unless employed by a passenger, and the city could give them no authority to do so. And any arrangements for the delivery of passengers and their baggage—not unlawful in themselves—which are made by the railroads in their own cars, and on their own lands, are exempt from municipal interference; and the ordinances—so far as they may attempt such interference, are invalid. The conviction must be quashed."

Accordingly, insofar as subdivision a of section 21 of the Taxi-cab Ordinance attempts to legislate on the subject of solicitation upon private property, it is unconstitutional and void. Nor do I think that the provision in subdivision b of section 21 of the same ordinance requiring the filing of a written consent saves the section in question.

The motion to dismiss the information is granted and the defendant is discharged.