[No. 5347.]

[No. 2995 C. A.]

### The Union Depot and Railway Company
### v. Meeking et al.

**Railroads—Regulation of Station Grounds—Discrimination as to Hackmen.**

A railroad or depot company owning a strip of land at a passenger station for the accommodation of travelers on railroads may lawfully exclude some hackmen or carriers of baggage from using it as a hack stand for the purpose of plying their vocation, they being allowed free access to deliver outgoing and receive incoming passengers, while it gives to others permission to do so.—P. 94.

*Error to the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Action by Abe Meeking, Henry J. Buscher, James Haney, F. M. Peery, P. W. Blakely, Charles Blakely, Thomas Jackson, E. M. Cox, August Petty-

sier, Fred Blanchard, J. E. Muse, William Baker, William Haney and C. W. Williams against The Union Depot & Railway Company. From a judgment for plaintiffs, defendant brings error.

*Reversed.*

Messrs. WOLCOTT, VAILE & WATERMAN and Messrs. DORSEY & HODGES, for plaintiff in error.

No appearance for defendants in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The defendant corporation was organized under the laws of this state for the accomplished purpose of acquiring and maintaining in the city of Denver a union depot or passenger station, which is situate near the terminal points of several railroads to which defendant furnishes the usual facilities of a depot or passenger station for the accommodation of the traveling public. The plaintiffs are licensed hackmen, conducting in this city the business of carrying passengers and baggage for hire, particularly to and from this union depot.

About twenty-five years before the beginning of this action, the fire and police board of the city of Denver, and defendant's grantor, designated a certain strip of land leading from Wynkoop and Seventeenth streets into the union depot as a hack stand, and permitted plaintiffs and other hackmen in the city of Denver to occupy it for such purpose. Shortly before this action was begun, plaintiffs were ordered by defendant no longer to occupy this strip of ground as a stand for their hacks, and immediately to vacate the same, and not to enter thereon to receive or discharge passengers destined to, or leaving, the union depot.

In the complaint in which the foregoing facts are alleged, plaintiffs say that this strip of ground is a part of the public highway, and belongs to the city and county of Denver, and the defendant has no control over, or interest in, it. It is further averred that if defendant carries out its threats to exclude plaintiffs therefrom while awaiting the arrival of travelers, or ejects them from these premises, or impedes or annoys them in the conduct of their business as they have theretofore conducted it for a long time, they and the public at large, particularly such portion of the public as are from time to time traveling on trains running into the depot, will suffer great loss, inconvenience and damage which is incapable of being estimated. Therefore they pray for an injunction to restrain defendant from excluding them from occupying the premises, or ejecting them therefrom, or preventing them from using the same as they had theretofore been accustomed to do.

Defendant filed an answer, and plaintiffs a replication, and upon issues thus joined hearing was by the court without a jury. Special findings of fact were made, from which the court concluded that the equities were with plaintiffs, and upon such findings rendered a decree enjoining defendant from discriminating against plaintiffs in favor of a corporation to which defendant had granted the privilege, which plaintiffs claimed as a legal right, of entering upon defendant's grounds and there soliciting patronage.

It would seem that the case, as made by the complaint, was not, in all respects, proved by the evidence or upheld by the findings. No objection was made by defendant at the trial to the departure, and no error is assigned or argued to the variance between the allegations of the complaint and the proofs. Both parties apparently consented to have the law applied to the facts as found by the court, though

they are not the facts which the plaintiffs allege in their complaint as their cause of action. We mention this, not because our decision is in any way affected by it, but as a reminder that we have not overlooked it.

We proceed, therefore, to dispose of the cause on the special findings of fact. So far as they are material to the question of law involved, these findings are that this strip of land which plaintiffs and other hackmen have for a long time been accustomed to use as a hack stand, and from which the complaint alleges that defendant has ordered them to withdraw, and threatened to eject them from the same if they occupied it, is not, as the complaint alleges, a public highway, but, as the answer says, the private property of defendant. There was a finding that the chief of police of the city of Denver, with the license and consent of defendant's grantor, designated this strip as a hack stand, and that it had been so used by plaintiffs and others in the conduct of their business in carrying passengers to and from the depot, and that defendant had notified the hackmen, including plaintiffs, that they could no longer use this strip of land for the purpose of a hack stand, or to solicit patronage thereon. The important finding of fact, on which it based the decree, was stated by the court in the following language:

"The court further finds that the defendant, The Union Depot and Railway Company, has entered into a certain contract between itself, the defendant company, and The Denver Omnibus and Cab Company, conferring upon and granting to the said The Denver Omnibus and Cab Company, the exclusive privilege of entering with its hacks upon the grounds of the defendant company, and using the same and particularly the strip of land above referred to, for the purpose of carrying on its business as an omni-

bus and cab company, and there soliciting the patron-
age of incoming passengers, to the exclusion of the
plaintiffs from the right to a similar entry upon, and
use of the premises of, the said defendant company.''

The court also made a finding—which seems to
be rather a conclusion of law—that the exclusive
right to solicit business from incoming passengers,
and standing their hacks or vehicles on this strip of
land, would give to the one who enjoyed the same an
advantage over other hackmen or busmen who were
excluded therefrom, and that such exclusive contract
operated as a discrimination in favor of The Denver
Omnibus and Cab Company against the plaintiffs,
and tended to create a monopoly in its favor.

It was upon this supposed unlawful discrimina-
tion against plaintiffs in favor of the cab company,
to which the exclusive privilege was given, that the
court concluded, as a matter of law, that the equities
were with plaintiff, and rendered a decree prohibit-
ing defendant company from enforcing the contract
that purported to confer the privilege.

The finding above quoted may be ambiguous,
since it might be inferred therefrom that the purpose
of defendant was to exclude plaintiffs from entering
upon the depot grounds, or into the passenger sta-
tion, while engaged in carrying passengers and bag-
gage to and from the same.   The answer, however,
expressly denies that such was its purpose or inten-
tion, and there is an express averment therein that
plaintiffs and each of them were notified that they
might at all reasonable hours and times enter the de-
pot and upon the depot grounds as the agents or
representatives of persons whom they, or any of
them, had contracted to deliver at, or carry from, the
depot.   The finding evidently meant that defendant's
purpose was and is to prevent plaintiffs from using
its grounds as a place for standing their vehicles,

or as a place whereon to solicit patronage, while it conferred upon, and granted such rights to, The Denver Omnibus and Cab Company.

But we think the court did not intend to find that defendant had ordered, or threatened to order, plaintiffs not to enter upon its premises to deliver or receive passengers. The plaintiffs made such an allegation in the complaint, but they produced no evidence whatever to prove it, while defendant's superintendent positively testified that no such order of exclusion had ever been made or threatened; but, on the contrary, plaintiffs were specifically told they might enter upon its premises freely at all reasonable hours, both to receive incoming, and to deliver outgoing, passengers. And that this is so becomes plain when it is considered that there is no clause in the decree which restrains defendant from refusing plaintiffs free access to its grounds to carry passengers to and fro, obviously because there was no evidence that such was its intention, while the only acts it is enjoined from doing are such as tend to obstruct plaintiffs in their claim of right to use the designated strip of land as a hack stand, and as a place where they might freely ply their vocation. The question of the right of plaintiffs to free access to the depot for taking thereto departing, or receiving arriving, passengers with whom plaintiffs might have a contract of carriage, is not in this case. Such right is not questioned, but directly recognized, by defendant.

The vital question, then, in the case, and the only one determined below, may thus be stated: May defendant lawfully permit The Denver Omnibus and Cab Company to have the sole right to stand, and solicit patronage, upon the premises of the defendant, and exclude all other hackmen from standing and soliciting thereon?

The question is one of first impression in this jurisdiction. It has been ruled differently by different courts. Some of the earlier cases, apparently based upon the ruling of the supreme court of New Hampshire in *Markham v. Brown,* 8 N. H. 523, hold that such a contract as that which the defendant here made with The Denver Omnibus and Cab Company, and the purpose of defendant to exclude plaintiffs from soliciting patronage in or upon the depot building and grounds, are in violation of the legal rights of plaintiffs, and in disregard of the supposed public duty of a railroad or depot company to furnish equal facilities to all having business with it.

The later and better reasoned cases hold that, as the owner of property, in the exercise of his dominion over it, may invite one to enter upon and occupy it and exclude all others, so a railroad or depot company owning a passenger station or depot for the accommodation of travelers upon railroads, may lawfully exclude some hackmen or carriers of baggage from entering thereon for the purpose of there plying their vocation, while it gives to others permission so to do.

The supreme court of New Hampshire, though at first holding that such public corporations might not thus exclude common carriers from their premises, or discriminate in favor of one, in a late case (*Hedding v. Gallagher,* 72 N. H. 377) has taken the opposite view, and in an instructive opinion by Walker, J., has reviewed the leading authorities *pro* and *con,* and settled the law for that state in favor of such action as the depot company here is charged with.

After the decree of the lower court was entered herein, the precise question which is now before us was decided in *Donovan v. Penn. Co.,* 199 U. S. 279, in a writ of certiorari to the judgment of the United

States circuit court of appeals for the seventh circuit, the opinion in which is reported in 120 Fed. 215. We forbear citing other authorities which sustain our conclusion, since in the opinions of the courts in these cases just referred to, all of the cases upon this subject are collated, and many of them are exhaustively reviewed. The opinion of Mr. Justice Harlan, of the supreme court of the United States, is so entirely in point and conclusive upon every feature of the case in hand that it would be presumptuous upon our part to enter upon an independent discussion of the law of the case. The decision of that august tribunal is controlling with us, not merely because of the reasoning of the opinion, but because the question determined is the same there as here. The entire opinion is pertinent, but one or two excerpts will show the grounds for the decision. In answer to the argument of counsel for the excluded hackmen, based upon the public functions and duties of railroad companies which are said to forbid them to discriminate in favor of one hackman against another, and after stating that a railroad or depot company must devote its property primarily to public use to the extent necessary for the public objects intended to be accomplished by the construction and maintenance of the railroad as a highway, the court said:

"It by no means follows, however, that the company may not establish such reasonable rules, in respect to the use of its property, as the public convenience and its interests may suggest; provided only that such rules are consistent with the ends for which the corporation was created and not inconsistent with public regulations legally established for the conduct of its business. Although its functions are public in their nature, the company holds the legal title to the property which it has undertaken to employ in the discharge of those functions. And as incident to

ownership it may use the property for the purposes of making profit for itself; such use, however, being always subject to the condition that the property must be devoted primarily to public objects, without discrimination among passengers and shippers, and not be so managed as to defeat those objects. It is required, under all circumstances, to do what may be reasonably necessary and suitable for the accommodation of passengers and shippers. But it is under no obligation to refrain from using its property to the best advantage of the public and of itself. It is not bound to so use its property that others, having no business with it, may make profit to themselves. Its property is to be deemed, in every legal sense, private property as between it and those of the general public who have no occasion to use it for purposes of transportation.

"Applying these principles to the case before us, it would seem to be clear that the Pennsylvania company had the right—if it was not its legal duty—to erect and maintain a passenger station and depot buildings in Chicago for the accommodation of passengers and shippers as well as for its own benefit; and that it was its duty to manage that station so as to subserve, primarily, the convenience, comfort and safety of passengers and the wants of shippers. It was, therefore, its duty to see to it that passengers were not annoyed, disturbed or obstructed in the use either of its station house or of the grounds over which such passengers, whether arriving or departing, would pass. It was to that end—primarily as we may assume from the record—that the Pennsylvania company made an arrangement with a single company to supply all vehicles necessary for passengers. We cannot say that that arrangement was either unnecessary, unreasonable or arbitrary; on the contrary, it is easy to see how, in a great city and in

a constantly crowded railway station, such an arrangement might promote the comfort and convenience of passengers arriving and departing, as well as the efficient conduct of the company's business.''

There was no finding here that defendant's arrangement with the cab company was inadequate for the accommodation of passengers arriving at, or departing from, the union depot, and there is nothing in the record to show that it was. Neither was there any such showing in the Donovan case, *supra,* but Mr. Justice Harlan, in response to the argument of counsel for the complaining hackmen in that case that the traveling public were inconvenienced by a similar arrangement, and this constituted a part of their grievance against the railway company, said, what is pertinent to the precise contention of the hackmen here, as well as to the particular argument there:

''The record does not show that the arrangement referred to was inadequate for the accommodation of passengers. But if inadequate, or if the Transfer Company was allowed to charge exorbitant prices, it was for passengers to complain of neglect of duty by the railroad company and for the constituted authorities to take steps to compel the company to perform its public functions with due regard to the rights of passengers. The question of any failure of the company to properly care for the convenience of passengers was not one that, in any legal aspect, concerned the defendants as licensed hackmen and cabmen. It was not for them to vindicate the rights of passengers. They only sought to use the property of the railroad company to make profit in the prosecution of their particular business. A hackman, in no wise connected with the railroad company, cannot, of right and against the objections of the company, go upon its grounds or into its station or cars for the

purpose simply of soliciting the custom of passengers; but, of course, a passenger upon arriving at the station, in whatever vehicle, is entitled to have such facilities for his entering the company's depot as may be necessary."

The judgment of the district court being in conflict with the conclusion which we have reached, it is reversed and the cause remanded with instructions to the district court to vacate the decree heretofore rendered and dismiss the action.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.