BLACK AND WHITE TAXICAB AND TRANSFER COMPANY *v.* BROWN AND YELLOW TAXICAB AND TRANSFER COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 174. Argued January 13, 16, 1928.—Decided April 9, 1928.

A Kentucky railroad corporation made a contract with the plaintiff, a Tennessee corporation carrying on a transfer business at a city

in Kentucky, whereby it granted to plaintiff the exclusive privilege of going upon its trains, into its depot and on its surrounding premises to solicit transportation of baggage and passengers, and assigned a plot of ground belonging to it for the use of plaintiff's taxicabs while awaiting the arrival of trains, the plaintiff on its part agreeing to render certain services and to make monthly payments. The term of the contract was for one year, to continue for consecutive yearly periods until terminated by either party on thirty days' notice. Plaintiff was the successor of a Kentucky transfer corporation of the same name, which had had a like contract with the railroad company, and which was dissolved after its shareholders had incorporated the plaintiff and caused the property and business to be transferred to it. The purpose of the change of corporations and contracts, coöperated in by the railroad company, was to create a diversity of citizenship. In a suit brought by the plaintiff in the federal court in Kentucky, on the basis of diverse citizenship, to restrain another transfer corporation, created in Kentucky, from soliciting business and parking vehicles on the railroad premises in violation of plaintiff's exclusive contract, and to restrain the railroad company from permitting such violations, *Held:*

1. That the suit was not subject to dismissal under Jud. Code § 37, since the controversy was real and substantial, the plaintiff was the real party in interest, and the requisite diversity of citizenship existed. The coöperation between the plaintiff and the railroad company to have the rights of the parties determined by a federal court was not improper or collusive within the meaning of § 37.  P. 524.

2. The contract did not exceed the railroad company's powers under its Kentucky charter.  P. 525.

3. The contract is consistent with the provision of the Kentucky Constitution, § 214, forbidding any railroad company to make any exclusive or preferential arrangement for the conduct of any business as a common carrier.  P. 526.

4. In the absence of any governing provision of local statutes or constitution, the question whether such a contract is against public policy, is one of general law.  P. 526.

5. Under the common law, as construed and applied by this Court, by state courts generally, and by English courts, such contracts are valid. *Delaware etc. R. R. Co.* v. *Morristown,* 276 U. S. 182.  P. 527.

6. Where the validity of a contract (in this case made in a State which has adopted the common law), involves no question of

land title, or of local statute or constitution, or of fixed local usage, but depends upon a question of general law, federal courts, while inclining to follow courts of the State in which the controversy arises, are not bound by Rev. Stats., § 721, to do so but are free to exercise their own, independent judgment. P. 529.

15 F. (2d) 509, affirmed.

CERTIORARI, 273 U. S. 690, to a decree of the Circuit Court of Appeals which affirmed a decree of permanent injunction against the above-named petitioner and the Louisville & Nashville Railroad Company, restraining violation of a contract between the railroad company and the respondent. The railroad company did not appeal.

*Mr. N. P. Sims,* with whom *Messrs. John L. Stout* and *Guy H. Herdman* were on the brief, for petitioner.

Dismissal of the action should have been ordered under § 37 of the Judicial Code. *Lehigh Mining Co. v. Kelly,* 160 U. S. 327; *Miller & Lux v. Canal Co.,* 211 U. S. 293; Foster's Fed. Prac., Vol. 1, p. 134; *Morris v. Gilman,* 129 U. S. 315.

The law as decided by the Kentucky Court of Appeals should be followed as controlling on the validity of the contract. *Hartford Fire Ins. Co. v. Chicago, etc., Ry. Co.,* 175 U. S. 91; *Equitable Life Ins. Co. v. Brown,* 213 U. S. 29; *Palmer v. Ohio,* 248 U. S. 32; *Hairston v. Danville Ry. Co.,* 208 U. S. 598.

If respondent's right in the contract be considered property, then the decision of the state court establishing a rule in regard to it is to be followed by the federal courts. L. R. A., 1916A, 1011; 40 L. R. A. (N. S.), 380, 412 to 433; *Guffey v. Smith,* 237 U. S. 101; *Hinde v. Vatter,* 5 Pet. 398; *Swift v. Tyson,* 16 Pet. 1; *Kuhn v. Fairmont Coal Co.,* 215 U. S. 349.

*Donovan v. Pennsylvania Co.,* 199 U. S. 278, distinguished.

The contract is in excess of the railroad company's charter power. *McConnell* v. *Pedigo,* etc., 92 Ky. 465.

The contract was contrary to § 214, Kentucky Constitution, and therefore unenforceable. *L. & N. R. R. Co.* v. *Central Stockyards Co.,* 133 Ky. 148.

*Mr. M. M. Logan* for respondent.

Respondent, acting in good faith, was within its rights in obtaining its charter from Tennessee, although it may have done so for the purpose of conferring on the federal courts jurisdiction to determine controversies which might arise between it and the citizens of Kentucky. *Lehigh Mining Co.* v. *Kelly,* 160 U. S. 327, distinguished.

Federal courts are not compelled to follow the decisions of the local state courts on questions of general law. *Salem Trust Co.* v. *Manufacturers' Finance Co.,* 264 U. S. 182.

*Donovan* v. *Pennsylvania R. R. Co.,* 199 U. S. 278, decides all points raised in this suit against the contention of petitioner, except one question of fact, which has been decided against it both by the District Court and the Circuit Court of Appeals.

The Railroad Company has implied authority to do all acts necessary for the full and complete utilization of its special powers, which are not expressly or impliedly excluded by the terms of the grant. Aside from the transportation of freight and passengers, it may use its individual property as it pleases so as to make money for itself. *Louisville Property Co.* v. *Commonwealth,* 146 Ky. 847.

It is by reason of the implied authority which a railroad company has to use its private property as it pleases when the use does not relate to its transportation business that it may rent part of its depot and building for news stands,

restaurants, barber shops, and other like conveniences. If it may do this, it may lease to a taxicab company its grounds so that the employees of such company may come thereon and solicit business. It has the authority to keep off of its premises any person not having any business with it who desires to use its property for his personal gain.

The Railroad Company has implied authority under its charter to enter into contracts such as the one in controversy, *Louisville Property Co.* v. *Commonwealth, supra.*

The contract is not violative of § 214, Kentucky Constitution.

The contract was not made by the Railroad Company for the conduct of its business as a common carrier.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Respondent sued petitioner and the Louisville and Nashville Railroad Company in the United States court for the western district of Kentucky to prevent interference with the carrying out of a contract between the railroad company and the respondent. The district court entered a decree in favor of respondent. The railroad company declining to join, petitioner alone appealed. The Circuit Court of Appeals affirmed, 15 F. (2d) 509, and this Court granted a writ of certiorari. 273 U. S. 690.

Respondent is a Tennessee corporation carrying on a transfer business at Bowling Green, Kentucky. The petitioner is a Kentucky corporation in competition with respondent. The railroad company is a Kentucky corporation. In 1925, it made a contract with respondent whereby it granted the exclusive privilege of going upon its trains, into its depot, and on the surrounding premises to solicit transportation of baggage and passengers. And

it assigned a plot of ground belonging to it for the use of respondent's taxicabs while awaiting the arrival of trains. In consideration of the privileges granted, respondent agreed to render certain service and to make monthly payments to the railroad company. The term of the contract was fixed at one year to continue for consecutive yearly periods until terminated by either party on thirty days' notice.

Jurisdiction of the district court was invoked on the ground that the controversy was one between citizens of different States. 'The complaint alleges that the railroad company failed to carry out the contract in that it allowed others to enter upon its property to solicit transportation of baggage and passengers and to park on its property vehicles used for that purpose. It alleges that petitioner entered, solicited business and parked its vehicles in the places assigned to respondent, and also on an adjoining street so as to obstruct the operation of respondent's taxicabs. Petitioner's answer alleges that respondent was incorporated in Tennessee for the fraudulent purpose of giving the district court jurisdiction and to evade the laws of Kentucky. It asserts that the contract is contrary to the public policy and laws of Kentucky as declared by its highest court, and that it is monopolistic, in excess of the railroad company's charter power and violates § 214 of the constitution of the State.

The record shows that, in September, 1925, respondent was organized in Tennessee by the shareholders of a Kentucky corporation of the same name then carrying on a transfer business at Bowling Green and having a contract with the railroad company like the one here involved; that the business and property of the Kentucky corporation were transferred to respondent, and the former was dissolved. Respondent's incorporators and railroad representatives, preferring to have this controversy deter-

mined in the courts of the United States, arranged to have respondent organized in Tennessee to succeed to the business of the Kentucky corporation and to enter into this contract in order to create a diversity of citizenship. The district court found there was no fraud upon its jurisdiction, held the contract valid and found, substantially as alleged in the complaint, that petitioner violated respondent's rights under it. The decree enjoins petitioner from continuing such interference.

1. Section 37 of the Judicial Code requires any suit commenced in a district court to be dismissed, if it shall appear that the suit does not really and substantially involve a dispute or controversy properly within its jurisdiction or that the parties have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable in such court. The requisite diversity of citizenship exists. And the controversy is real and substantial. The privilege granted is valuable. Petitioner treats the contract as invalid and claims to be entitled, without the consent of the railroad company to use railroad property to park its vehicles and solicit business. The railroad company has failed to protect the rights it granted. The motives which induced the creation of respondent to become successor to its Kentucky grantor and take a transfer of its property have no influence on the validity of the transactions which are the subject of the suit. The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction. *M'Donald* v. *Smalley et al.,* 1 Pet. 620, 624. It is enough that respondent is the real party in interest. *Smith et al.* vs. *Kernochen,* 7 How. 198, 216. The incorporation of respondent or its title to the business and contract in question is not impeached.

Coöperation between it and the railroad company to have the rights of the parties determined by a federal court was not improper or collusive within the meaning of § 37. *Re Metropolitan Railway Receivership,* 208 U. S. 90, 110. *Harkin* v. *Brundage,* 276 U. S. 36. *South Dakota* v. *North Carolina,* 192 U. S. 286, 311. It requires no discussion to distinguish *Lehigh Mining and Mfg. Co.* v. *Kelly,* 160 U. S. 327, and *Miller & Lux* v. *East Side Canal Co.,* 211 U. S. 293. The district court had jurisdiction.

2. Petitioner maintains that the contract is not enforceable because in excess of the railroad company's power under its charter, and cites the decision of the Kentucky Court of Appeals in *McConnell* v. *Pedigo,* 92 Ky. 465. That case involved a grant by the railroad company of the exclusive privilege of standing hacks at the platform of its depot in Glasgow. The court did not refer to any of the terms of the charter. But petitioner states that the railroad company was incorporated by an Act of the Legislature of Kentucky, approved March 4, 1850, and purports to quote the section relating to corporate powers. " The said Louisville and Nashville Railroad Company . . . may make all such regulations, rules and by-laws as are necessary for the government of the corporation, or for effecting the object for which it is created: *Provided,* that such regulations, rules and by-laws shall not be repugnant to the laws and constitution of said State or the United States . . . ". The opinion does not hold or suggest that the contract was contrary to any provision of the constitution or statutes of Kentucky or in violation of federal law. The court's conclusion rests on its determination of a question of general law and not upon a construction of the charter. Moreover that court has given this charter a much broader construction than that insisted on by petitioner. In *Louis-*

*ville Property Co.* v. *Commonwealth,* 146 Ky. 827, it held that, " In the maintenance of a place for hotel or restaurant accommodations, and for pleasure, recreation and rest, such as is afforded by a park, neither the letter nor the spirit of the Constitution or statute is violated, but the railroad company acts in the exercise of certain implied powers which it is not prohibited to exercise." So far as concerns the railroad company's charter authority to make it, the contract is clearly within the principle of that decision.

3. Section 214 of the Kentucky constitution provides that no railway company shall make any exclusive or preferential arrangement for the handling of freight " or for the conduct of any business as a common carrier." Petitioner invokes the last clause. The railroad company is under no obligation to transport passengers or baggage from its station. *McConnell* v. *Pedigo, supra,* 468. It is not bound to permit those engaged in such transportation to use its property, to solicit patronage, park their vehicles or otherwise to carry on their business. The contract does not relate to the railroad company's business as a common carrier. *D. L. & W. R. R. Co.* v. *Morristown,* 276 U. S. 182.

4. The Court of Appeals of Kentucky held such contracts invalid in *McConnell* v. *Pedigo, supra,* and *Palmer Transfer Co.* v. *Anderson,* 131 Ky. 217. Invalidity of a similar contract was assumed arguendo in *Commonwealth* v. *Louisville Transfer Co.,* 181 Ky. 305. As reasons for its conclusion that court suggests that the grant of such privileges prevents competition, makes such discrimination as is unreasonable and detrimental to the public and constitutes such a preference over other transfer men as to give grantee a practical monopoly of the business. It has not held them repugnant to any provision of the statutes or constitution of the State. The question there decided

is one of general law. *Donovan* v. *Pennsylvania Company*, 199 U. S. 279, 300. This Court holds such con-tracts valid. *Donovan* case, *supra*, 297. *Morristown* case, *supra*. And these decisions show that, without its consent, the property of a railroad company may not be used by taxicabmen or others to solicit or carry on their business and that it is beyond the power of the State in the public interest to require the railroad company with-out compensation to allow its property so to be used.

And state courts quite generally construe the common law as this Court has applied it. *Old Colony Railroad Co.* v. *Tripp*, 147 Mass. 35. *Boston & Albany Railroad* v. *Brown*, 177 Mass. 65. *New York, N. H. & H. R. Co.* v. *Scovill*, 71 Conn. 136, 145. *Griswold* v. *Webb*, 16 R. I. 649, 651. *New York, N. H. & H. R. R. Co.* v. *Bork*, 23 R. I. 218, 222. *Hedding* v. *Gallagher*, 72 N. H. 377. *Brown* v. *N. Y. C. & H. R. R. Co.*, 75 Hun. 355, 359. *Thompson's Exp. & Storage Co.* v. *Whitemore*, 88 N. J. Eq. 535. *Nor-folk & Western R. Co.* v. *Old Dominion Baggage Co.*, 99 Va. 111. *Rose* v. *Public Service Commission*, 75 W. Va. 1, 5. *State* v. *Depot Co.*, 71 O. S. 379. *Railroad* v. *Kohler*, 107 Kan. 673, 677. *Railroad Co.* v. *Davidson*, 33 Utah 370. *Union Depot & Ry. Co.* v. *Meeking*, 42 Colo. 89, 95. *Dingman* v. *Duluth, etc. R. Co.*, 164 Mich. 328. *Lewis* v. *Railway Co.*, 36 Tex. Civ. App. 48, 50. See *Common-wealth* v. *Power*, 7 Metc. 596, 600. *Godbout* v. *Saint Paul Union Depot Co.*, 79 Minn. 188, 200. *Napman* v. *People*, 19 Mich. 352, 355. *Fluker* v. *Georgia Railroad & Bank-ing Co.*, 81 Ga. 461, 463.

In harmony with the Kentucky decisions, the highest courts of Indiana and Mississippi hold such contracts invalid. *Indianapolis Union R. Co.* v. *Dohn*, 153 Ind. 10. *State* v. *Reed*, 76 Miss. 211. The same conclusion is reached in *Cravens* v. *Rodgers*, 101 Mo. 247. *Montana Union Ry. Co.* v. *Langlois*, 9 Mont. 419. *Hack & Bus Co.*

v. *Sootsma,* 84 Mich. 194. But in each of the last three cases the conclusion rests, at least in part, upon a provision of state statute or constitution.

Arrangements similar in principle to that before us are sustained in English courts. *Perth General Station Committee* v. *Ross,* L. R. App. Cas. (1897) 479. *In re Beadell,* 2 C. B. (N. S.) 509. *Barker* v. *Midland Ry. Co.,* 18 C. B. 45.

The cases cited show that the decisions of the Kentucky Court of Appeals holding such arrangements invalid are contrary to the common law as generally understood and applied. And we are of opinion that petitioner here has failed to show any valid ground for disregarding this contract and that its interference cannot be justified. Care is to be observed lest the doctrine that a contract is void as against public policy be unreasonably extended. Detriment to the public interest is not be presumed in the absence of showing that something improper is done or contemplated. *Steele* v. *Drummond,* 275 U. S. 199. And it is to be remembered, as stated by Sir George Jessel, M. R., in *Printing Company* v. *Sampson,* L. R. 19 Eq. 462, 465, that public policy requires that competent persons " shall have the utmost liberty of contracting, and that their contracts, when entered into fairly and voluntarily shall be held sacred, and shall be enforced by Courts of justice." The station grounds belong to the railroad company and it lawfully may put them into any use that does not interfere with its duties as a common carrier. The privilege granted to respondent does not impair the railroad company's service to the public or infringe any right of other taxicabmen to transport passengers to and from the station. While it gives the respondent advantage in getting business, passengers are free to engage anyone who may be ready to serve them. The carrying out of such contracts generally makes for good order at railway sta-

tions, prevents annoyance, serves convenience and promotes safety of passengers. *D. L. & W. R. R. Co.* v. *Morristown, supra.* There is here no complaint by or on behalf of passengers; no lack of service, unreasonable exaction or inconvenience of the public is shown. It would be unwarranted and arbitrary to assume that this contract is contrary to public interest. The grant of privileges to respondent creates no duty on the part of the railroad company to give like privileges to others, and therefore there is no illegal discrimination. And, as the State is without power to require any part of the depot ground to be used as a public hack stand without providing just compensation therefor, then *a fortiori* such property may not be handed over for the use of petitioner without the consent of the owner.

5. The decree below should be affirmed unless federal courts are bound by Kentucky decisions which are directly opposed to this Court's determination of the principles of common law properly to be applied in such cases. Petitioner argues that the Kentucky decisions are persuasive and establish the invalidity of such contracts and that the Circuit Court of Appeals erred in refusing to follow them. But, as we understand the brief, it does not contend that, by reason of the rule of decision declared by § 34 of the Judiciary Act of 1789 (now R. S. § 721, U. S. C. Tit. 28 § 725), this Court is required to adopt the Kentucky decisions. But, granting that this point is before us, it cannot be sustained. The contract gives respondent, subject to termination on short notice, license or privilege to solicit patronage and park its vehicles on railroad property at train time. There is no question concerning title to land. No provision of state statute or constitution and no ancient or fixed local usage is involved. For the discovery of common law principles applicable in any case, investigation is not limited to the

decisions of the courts of the State in which the controversy arises. State and federal courts go to the same sources for evidence of the existing applicable rule. The effort of both is to ascertain that rule. Kentucky has adopted the common law and her courts recognize that its principles are not local but are included in the body of law constituting the general jurisprudence prevailing wherever the common law is recognized. *Hunt* v. *Warnicke's Heirs,* 3 Hardin 61. *Lathrop* v. *Commercial Bank,* 8 Dana 114, 121. *Ray* v. *Sweeney,* 14 Bush 1, 9, *et seq.* *Aetna Insurance Co.* v. *Commonwealth,* 106 Ky. 864, 876. *Nider* v. *Commonwealth,* 140 Ky. 684, 686. And see 1 Kent's Commentaries (14th ed.) pp. 451, 602. As respects the rule of decision to be followed by federal courts, distinction has always been made between statutes of a State and the decisions of its courts on questions of general law. The applicable rule sustained by many decisions of this Court is that in determining questions of general law, the federal courts, while inclining to follow the decisions of the courts of the State in which the controversy arises, are free to exercise their own independent judgment. That this case depends on such a question is clearly shown by many decisions of this Court. *Swift* v. *Tyson,* 16 Pet. 1, 19, was an action on a bill of exchange. Mr. Justice Story, writing for the Court, fully expounded § 34 of the Judiciary Act. *Carpenter* v. *Insurance Company,* 16 Pet. 495, 511, held that the construction of an insurance policy involves questions of general law. *Lane* v. *Vick,* 3 How. 464, involved the construction of a will. It was said (p. 476): " This court do not follow the state courts in their construction of a will or any other instrument, as they do in the construction of statutes." *Foxcroft* v. *Mallett,* 4 How. 353, 379, held that the decision of a state court construing a deed is not conclusive on this Court. *Chicago City* v. *Robbins,* 2 Bl. 418, 428, declined to follow the determination of the state court as to what

constitutes negligence.  *Yates* v. *Milwaukee*, 10 Wall. 497, 506, held that the determination of what constitutes a dedication of land to public use is one of general law. *Olcott* v. *Supervisors*, 16 Wall. 678, 689, held that the determination of what is a public purpose to warrant municipal taxation involves a question of general law. *Railroad Company* v. *Lockwood*, 17 Wall. 357, 366, declined to follow the state rule as to liability of common carriers for injury of passengers.  *Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 443, held a question concerning the validity of a contract for carriage of goods is one of general law.  *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368, 370, so held as to the responsibility of a railroad company to its employees for personal injuries.  *Beutler* v. *Grand Trunk Railway*, 224 U. S. 85, 88, decides who are fellow-servants as a question of general law.*

The lower courts followed the well-established rule and rightly held the contract valid.  The facts shown warrant the injunction granted.

*Decree affirmed.*

---

* And see *Watson* v. *Tarpley*, 18 How., 517; *Mercer County* v. *Hackett*, 1 Wall. 83, 95; *Supervisors* v. *Schenck*, 5 Wall. 772, 784; *Boyce* v. *Tabb*, 18 Wall. 546, 548; *Railroad Co.* v. *Jones*, 95 U. S. 439; *Hough* v. *Railway Co.*, 100 U. S. 213, 226; *Oates* v. *National Bank*, 100 U. S. 239, 246; *Railroad Co.* v. *National Bank*, 102 U. S. 14, 29; *Burgess* v. *Seligman*, 107 U. S. 20, 32, et seq.; *Myrick* v. *Michigan Central R. R. Co.*, 107 U. S. 102, 109; *Pana* v. *Bowler*, 107 U. S. 529, 540; *Gibson* v. *Lyon*, 115 U. S. 439, 446; *Enfield* v. *Jordan*, 119 U. S. 680, 694; *Smith* v. *Alabama*, 124 U. S. 465, 478; *Lake Shore Railway Co.* v. *Prentice*, 147 U. S. 101, 106; *Gardner* v. *Michigan Central Railroad*, 150 U. S. 349, 358; *Oakes* v. *Mase*, 165 U. S. 363; *Barber* v. *Pittsburgh, &c., Railway*, 166 U. S. 83, 100; *Pennsylvania R. R. Co.* v. *Hughes*, 191 U. S. 477, 485–486; *Presidio County* v. *Noel-Young Co.*, 212 U. S. 58, 73; *Texas & Pacific Ry. Co.* v. *Bourman*, 212 U. S. 536, 541, and cases cited; *Kuhn* v. *Fairmont Coal Co.*, 215 U. S. 349, 357, et seq.; *Salem Co.* v. *Manufacturers' Co.*, 264 U. S. 182, 191; *B. & O. R. R.* v. *Goodman*, 275 U. S. 66, 70.

Mr. Justice Holmes, dissenting.

This is a suit brought by the respondent, The Brown and Yellow Taxicab and Transfer Company, as plaintiff, to prevent the petitioner, The Black and White Taxicab and Transfer Company, from interfering with the carrying out of a contract between the plaintiff and the other defendant, The Louisville and Nashville Railroad Company. The plaintiff is a corporation of Tennessee. It had a predecessor of the same name which was a corporation of Kentucky. Knowing that the Courts of Kentucky held contracts of the kind in question invalid and that the Courts of the United States maintained them as valid, a family that owned the Kentucky corporation procured the incorporation of the plaintiff and caused the other to be dissolved after conveying all the corporate property to the plaintiff. The new Tennessee corporation then proceeded to make with the Louisville and Nashville Railroad Company the contract above mentioned, by which the Railroad Company gave to it exclusive privileges in the station grounds, and two months later the Tennessee corporation brought this suit. The Circuit Court of Appeals, affirming a decree of the District Court, granted an injunction and upheld this contract. It expressly recognized that the decisions of the Kentucky Courts held that in Kentucky a railroad company could not grant such rights, but this being a ' question of general law ' it went its own way regardless of the Courts of this State.   15 F. (2d) 509.

The Circuit Court of Appeals had so considerable a tradition behind it in deciding as it did that if I did not regard the case as exceptional I should not feel warranted in presenting my own convictions again after having stated them in *Kuhn* v. *Fairmont Coal Company,* 215 U. S. 349. But the question is important and in my opinion the prevailing doctrine has been accepted upon a subtle fallacy

that never has been analyzed.  ·If I am right the fallacy has resulted in an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct.   Therefore I think it proper to state what I think the fallacy is.—The often repeated proposition of this and the lower Courts is that the parties are entitled to an independent judgment on matters of general law.   By that phrase is meant matters that are not governed by any law of the United States or by any statute of the State—matters that in States other than Louisiana are governed in most respects by what is called the common law.   It is through this phrase that what I think the fallacy comes in.

Books written about any branch of the common law treat it as a unit, cite cases from this Court, from the Circuit Courts of Appeals, from the State Courts, from England and the Colonies of England indiscriminately, and criticise them as right or wrong according to the writer's notions of a single theory.   It is very hard to resist the impression that there is one august corpus, to understand which clearly is the only task of any Court concerned.   If there were such a transcendental body of law outside of any particular State but obligatory within it unless and until changed by statute, the Courts of the United States might be right in using their independent judgment as to what it was.   But there is no such body of law.   The fallacy and illusion that I think exist consist in supposing that there is this outside thing to be found.   Law is a word used with different meanings, but law in the sense in which courts speak of it today does not exist without some definite authority behind it.   The common law so far as it is enforced in a State, whether called common law or not, is not the common law generally but the law of that State existing by the authority of that State without regard to what it

may have been in England or anywhere else. It may be adopted by statute in place of another system previously in force. *Boquillas Cattle Co.* v. *Curtis,* 213 U. S. 339, 345. But a general adoption of it does not prevent the State Courts from refusing to follow the English decisions upon a matter where the local conditions are different. *Wear* v. *Kansas,* 245 U. S. 154, 156, 157. It may be changed by statute, *Baltimore & Ohio R. R. Co.* v. *Baugh,* 149 U. S. 368, 378, as is done every day. It may be departed from deliberately by judicial decisions, as with regard to water rights, in States where the common law generally prevails. Louisiana is a living proof that it need not be adopted at all. (I do not know whether under the prevailing doctrine we should regard ourselves as authorities upon the general law of Louisiana superior to those trained in the system.) Whether and how far and in what sense a rule shall be adopted whether called common law or Kentucky law is for the State alone to ' decide.

If within the limits of the Constitution a State should declare one of the disputed rules of general law by statute there would be no doubt of the duty of all Courts to bow, whatever their private opinions might be. *Mason* v. *United States,* 260 U. S. 545, 555. *Gulf Refining Co.* v. *United States,* 269 U. S. 125, 137. I see no reason why it should have less effect when it speaks by its other voice. See *Benedict* v. *Ratner,* 268 U. S. 353, *Sim* v. *Edenborn,* 242 U. S. 131. If a state constitution should declare that on all matters of general law the decisions of the highest Court should establish the law until modified by statute or by a later decision of the same Court, I do not perceive how it would be possible for a Court of the United States to refuse to follow what the State Court decided in that domain. But when the constitution of a State establishes a Supreme Court it by implication does make that declaration as clearly as if it had said it in express words, so

far as it is not interfered with by the superior power of the United States. The Supreme Court of a State does something more than make a scientific inquiry into a fact outside of and independent of it. It says, with an authority that no one denies, except when a citizen of another State is able to invoke an exceptional jurisdiction, that thus the law is and shall be. Whether it be said to make or to declare the law, it deals with the law of the State with equal authority however its function may be described.

Mr. Justice Story in *Swift* v. *Tyson,* 16 Peters, 1, evidently under the tacit domination of the fallacy to which I have referred, devotes some energy to showing that § 34 of the Judiciary Act of 1789, c. 20, refers only to statutes when it provides that except as excepted the laws of the several States shall be regarded as rules of decision in trials at common law in Courts of the United States. An examination of the original document by a most competent hand has shown that Mr. Justice Story probably was wrong if anyone is interested to inquire what the framers of the instrument meant. 37 Harvard Law Review, 49, at pp. 81–88. But this question is deeper than that; it is a question of the authority by which certain particular acts, here the grant of exclusive privileges in a railroad station, are governed. In my opinion the authority and only authority is the State, and if that be so, the voice adopted by the State as its own should utter the last word. I should leave *Swift* v. *Tyson* undisturbed, as I indicated in *Kuhn* v. *Fairmont Coal Co.,* but I would not allow it to spread the assumed dominion into new fields.

In view of what I have said it is not necessary for me to give subordinate and narrower reasons for my opinion that the decision below should be reversed. But there are adequate reasons short of what I think should be recognized. This is a question concerning the lawful use of land in Kentucky by a corporation chartered by Ken-

tucky. The policy of Kentucky with regard to it has been settled in Kentucky for more than thirty-five years. *McConnell* v. *Pedigo,* 92 Ky. 465. (1892.) Even under the rule that I combat, it has been recognized that a settled line of state decisions was conclusive to establish a rule of property or the public policy of the State. *Hartford Fire Insurance Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 175 U. S. 91, 100. I should have supposed that what arrangements could or could not be made for the use of a piece of land was a purely local question, on which, if on anything, the State should have its own way and the State Courts should be taken to declare what the State wills. See especially *Smith Middlings Purifier Co.* v. *McGroarty,* 136 U. S. 237, 241.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE concur in this opinion.