

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2007

# Hereros v. Deutsche Afrika

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1684

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Hereros v. Deutsche Afrika" (2007). *2007 Decisions*. Paper 1332.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1332

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1684
_____

HEREROS, a Tribe and Ethnic and Racial Group by and through
its Paramount Chief by Paramount Chief Riruako;
PARAMOUNT CHIEF RIRUAKO; MBURUMBA GETZEN KERINA;
KURUNDIRO KAPUUO; CORNELIA TJAVEONDJA; MOSES NGUARAMBUKA;
HILDE KAZAKOKA KAMBERIPA; FESTUS KORUKUVE;
UEZUVANJO TJIHAVGC; UJEUETU TJIHANGE; MOSES KATUUO;
LEVY K.O. NJANJONE; FESTUS NDJAI;
HOOMAJO JjINGEE; UELEMBUIA TJINAWBA; JARARAIHE TJINGEE;
HANGEKAOUA MBINGE; EHRENS JEJA; NATHANAEL UAKUMBUA;
RUDOLPH KAUZUU; JAENDEKUA KAPIKA; BEN MBEUSERUA;
FELIX KOKATI; SAMUEL UPENDURA; MAJOOR FESTUS KAMBURONA;
UETAVERA TJIRAMBI; JULIUS KATJINGISIUA; GEBHARID MUESEE;
NAHASON KAAHANGORO; GERSON NGETUNIE; NIKLAAS KOUJO;
ESEKIEL TJIVIKUA; PUURIJATA MGOMBE; MUHONUNE TJIAUIKO;
ELISA MUYAHERE; USIEL ZAJERUES; VAUNDURA TJISUTA;
KAPIKA MOTJINDUIKO; KATJIMBATERE MBENDURA; UARAA MUPEU;
KAVARI HIALONGURU; CHRISTOR VEZUVAPI KOZOHUA;
GLAMENTOS MUPURUA; EHRENFRIED TJIPUTOVANDU;
NGORERA LANGUEMUNA; MEDTHEUS TJIRDUNDA; TUATUPUKUA HEPUTE;
SAULUS KASAONA; JOSEF TJIVINDE; UAKARENDA MBINGE;
UATUNDAUKA NGUMBI; VAHENUNA TJITAURA; KAISA NGUMBI;
KOMUZARA NGOMBE; OTTO TJITUKA; PAULUS NGOMBE;
TUAKAAKO TJINANA; JUNIA TJITUKA; KAZEIRE TJIUMA;
GABRIEL MBEJA; RUHUMBA LEONARD; JUEN KAETJAVI;
JAAS TJMWINE; TJINAE TJINGEE; JETURIMBA HEMBINDA;
NGORERA KAPEJATUA; NGUNAIHE MBARI; MBURURA MATITI;
TJIKUUA HEPUTE; KAIVAKA NGUMBI; UJAMBUA NGUMBI;
DAVID KAVARI; KATUNDU INAAUYOVA MATUVI; UAKAMUINA TJIPOSA;
MBOMI NGUMBI; HIKUMINUE KAPIKA, CHIEF; HEPUTE JONAS NEZETURISA;
UERIPANDA HEPUTE; MUJAZERIRE TJAMBIRU;
HONDJERA VERIUNELIKA ALMA; TJINIAKA TIJIAHURA;
OLIEFARIT MUHENJE; RATJIRAMBO RUTJINDO;
TJISUTA KARUKORO; HAMBEKA MUHARUKUA;
URANDAIJE MUHARUKUA GODFRIEDINE KAMBURONA;

SALINDE KAMBURONA; KAVARI MAHINDIUNE; TUTJAVI UERITURA;
TJAVARA, CHIEF; ERASTUS LAONGAVA; JOSEF JAPUHUA;
BENESIUS HUNGUA; VEKEURA RUHUMBA; TJIPENE KEJA, CHIEF;
JAMES ZEMBURUKA; CHRISTOPHER KAIKO; ALEX HAIRO KANGOOTUI;
TJOMBE FANUEL, CHIEF; TJINDUNDA MUHIHAMO; ELIA BAUTENNA TJIHO;
AARON KAHIIKO; UAVIRIKIZA TJIHOTO; NGOMBE HIJAKUNDI;
KAWENDISA HEVITA; KAVEBIU TJITUERE; ELISA BETHUEL KARIKO;
TJSEMO TUIZIUA; IASAKAR RUPINGENA; TJITAORO MBINGE;
BETHLEHEM MAIJA; TJANANGOMBE HEMBINDA; JOHN TJAKURUPE;
ADELHEID NEUEZA NDJAHERA-TJIJOROKISA;
CHIEF HOSEA KUTAKO FOUNDATION; MIKE PACK; ISAK KARAERUA;
DANIEL KATUWE; OTTMAN KATJANGUA; ELSE MATUKARUA;
CHRISTOFINE KAJANGUA; TEBULON KAIJANGUA;
GUSTAF DIEKMAM; LUKAS KAURORA;
MENESIA KATJZEMBUA ALBERTUS (KAAPEHI) SCHMIDT;
EUNICE KATJIZAMBUA; ARCELAUS KAIJANGUA; EWALD KAMUJUUIGE;
ISMAEL NGEKE KATJANGUA; HELEN DIEKMAMA; UEMUMUNO KERTJARI;
VICTORIA KAHORO; LEONARD KAMUINJO; ISASKAR TJAMBURO;
EUEN VON HEYBRECHT KATUAMBA; CLAUDE KATUAMBA;
EPHRAIM KAUAKA; MAGDALENA KARUUOMBE; GUSTAV RUPINGENA;
G.H. MBAUKUA; ROBERT KREMS; YVONNE KARUPA;
HERMAN KURANGERA; JOHANNES KAMORUAO;
PETER POMBA, GRANDSON; SIMSON TJINAPE;
GERMANS TOROMBA; PHELLEPUS BEHNSON MARINE;
KAMEZUN USIEL; HUMAIRNDU EZZARD ALBERT;
LUCIANE NJANDEREEKO TJIRAMBA WILLEMINE NUNUHE;
ESTER MUHANIUE; EWALD KENATJONGO;
KARL KAITJIZEMINE (KARUMBU); ANGEL TJAHERE;
FRIEDA KANTA; PRIESKA MBUNGA; GOTTGRIED MBUNGA;
ALFONS TJIPOSA MBAEVA; CONSTANIRA ZATJINUA; MENETHE MURANGI;
CHRISTOTINE KANANGURE; LEVI JACOBS KARITA; ERNST HEII;
HISKIA RATURUA MBAHA; ADRONIKUS URMANAIJE MAZELLA;
ELIZABETH MUURUA; VERONICA TJIVIKUA;
ERICH TJIPUEJA (VON BENNINGSSEN); GOTTHARDINE NGAIZUVARE;
RUDOLPH WINDISCH; ELDER MBAPUPUA; ALAID TJOMBONDE;
ERNA MBETJIHA; JOEL MBETJIHA; PRESLEY TJIZKPA;
JUSTOPHINE AGNES UETUZUVA TUJIHO; FESTUS TJIKUVIRA;
ELSE KAESORA MORTUKANIA; ANGEL INAERIHIHE MBOUNDJE;
JOSHA KANTJITEO; M.K. HEVIKE; CHRISTOFINE UJAVA;
FRIEDA WAMUNIKA; JULIA TJIPITUA; PAUL KAUATOUOJAO;
TOHA HELELE KEJA; WERNER MBETJIHA;

EBEW-EZER RINATJIKE KAVINDIKIZA; JOEL KOMBEPE;
ALEXIA KANDOVAZU LIBBE; NATEUS KANGEN MATIES;
MERIAM MBEKUMUNA MATTEN WODT; MERIARIE RUHR MUVANGUA;
OSCAR RUKORO; VICEORINE TJIUER; ALFONS KAIJANGUA

Appellants

v.

DEUTSCHE AFRIKA-LINIEN GMBLT & CO.,
Palmaille 45 22767 HAMBURG, GERMANY,
f/k/a WOERMANN LINE
Appellee
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cv-01872)
District Judge:  Honorable Katharine S. Hayden
_____

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2006

Before:  FISHER and CHAGARES, *Circuit Judges*,
and BUCKWALTER,* *District Judge*.

(Filed:  April 10, 2007)
_____

OPINION OF THE COURT
_____

*The Honorable Ronald L. Buckwalter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

BUCKWALTER, *District Judge*.

In this appeal, we consider whether the United States District Court for the District of New Jersey erred in granting Woermann Line's, also known as Deutsche Afrika-Linien Gmbh & Co., ("Appellee") Motion to Dismiss by concluding that the Herero Tribe ("Appellants") failed to raise a valid cause of action under the Alien Tort Statute ("ATS") or federal common law and that the applicable statute of limitations had run. For the reasons below, we will affirm the judgment of the District Court.

I.

As we write only for the parties, we recount the background of this litigation simply as a very brief preface to our analysis.[1] The Appellants are an African tribe from Namibia. Appellee is a German corporation which transacts business in New Jersey.

The Appellants sue Appellee for enslavement and crimes against humanity during the time Germany occupied South Africa, 1890 through 1915. Specifically, the Appellants allege that Appellee brutally employed slave labor and ran its own concentration camp. Appellants further allege that Appellee was an integral part of the German colonial enterprise because it controlled all harbor construction, entrance and

---

[1]The Appellants previously filed claims against Appellee and another corporate defendant, Deutsche Bank, in a lawsuit filed in 2001 in the Superior Court of the District of Columbia, which was removed to federal court. Appellee successfully argued lack of personal jurisdiction and was dismissed from the D.C. lawsuit. Additionally, while the D.C. lawsuit was pending the Appellants filed a similar lawsuit in the Southern District of New York against Appellee and Deutsche Bank which was voluntarily dismissed as to Appellee for lack of personal jurisdiction. This appeal is the result of a lawsuit filed only against Appellee in the District of New Jersey.

permitting fees, and dock and harbor labor during 1890 to 1915. The Appellants are suing under the ATS[2] and federal common law for damages suffered by the Appellants during 1890 to 1915.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a), and this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our standard of review over the District Court's decision to grant dismissal of the Appellant's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is plenary. We review the District Court's decision *de novo*. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).

## III.

The Appellants raise two points of error on appeal. First, the District Court erred as a matter of law when it concluded that the complaint failed to state a claim. Second, the District Court erred as a matter of law when it concluded that the claim was barred by the statute limitations. We will affirm the district court because the complaint failed to state a claim.

---

[2]"The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Alien Tort Claim Act, 28 U.S.C. § 1350.

IV.

Our analysis is based substantially upon the decision of the Supreme Court in <u>Sosa</u> <u>v. Alvarez-Machain</u>, 542 U.S. 692, 124 S. Ct. 2739, 159 L.Ed.2d 718 (2004). The history of the ATS as set forth in <u>Sosa</u> is instructive particularly with regard to the first point of error raised by the Appellants.

According to <u>Sosa</u>, at the time of enactment, the ATS "enabled federal courts to hear claims in a very limited category defined by the law of nations and recognized at common law." <u>Id.</u> at 711.

The history supports two propositions with regard to the ATS. First of those is that the statute was to have a practical effect and not simply await future legislation to authorize the creation of causes of action or itself make some element of the law of nations actionable for the benefit of foreigners.

The second proposition is that Congress intended the ATS to furnish jurisdiction for a relatively modest set of actions alleging violations of the law of nations.

Even acknowledging a cause of action for a modest number of international law violations, the Court in <u>Sosa</u> stated that "there are good reasons for a restrained conception of the discretion a federal court should exercise in considering a new cause of action of this kind." <u>Id.</u> at 725.

The first of those reasons, according to <u>Sosa</u>, is that the prevailing conception of the common law has changed since 1789, when it was thought of as ". . . a transcendental body of law outside of any particular state but obligatory within it unless changed by

6

statute" Id. at 725, (quoting Black and White Taxicab & Transfer Co. v. Brown and

Yellow Taxicab & Transfer Co., 276 U.S. 518, 533, 48 S. Ct. 404, 72 L.Ed. 681 (1928)

(Holmes, J. dissenting)).

Now, according to Sosa, when a court is asked to state common law, it is either

made or created rather than found or discovered. This latter formulation of common law

involves a substantial element of judicial discretion.

A second reason for judicial caution has to do with the role of federal courts in

making common law, which is circumscribed by case law, most notably Erie R. Co. v.

Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938).

Third, the court has repeatedly stated that the creation of private rights of actions is

best left to the legislature. In this regard, the court in Sosa said: "While the absence of

congressional action addressing private rights of action under an international norm is

more equivocal than its failure to provide such a right when it creates a statute, the

possible collateral consequences of making international rules privately actionable argue

for judicial caution." 542 U.S. at 727.

Fourth, the possible collateral consequences themselves suggest caution, since

providing remedies for court created new norms of international law could raise the risk

of adverse foreign policy consequences.

Finally, the court in Sosa said: "We have no congressional mandate to seek out

and define new and debatable violations of the law of nations and modern indications of

7

congressional understanding of the judicial role in the field have not affirmatively encouraged greater judicial creativity." Id. at 728.

In light of those reasons, the Court reiterated the need for great caution in adapting the law of nations to private rights. Justice Scalia indeed argues that there should be no discretionary power for the federal judiciary to create causes of action for the enforcement of international law-based norms arguing that except in limited instances Erie v. Tompkins ended federal court elaboration and application of the general common law. While he would close the door, the majority in Sosa concluded "that the door is still ajar subject to vigilant door keeping, and thus, open to a narrow class of international norms today." 542 U.S. at 729.

For purposes of our analysis, we conclude our review of Sosa with the Supreme Court's statement:

> "Whatever the ultimate criteria for accepting a cause of action subject to jurisdiction under § 1350, we are persuaded that federal courts should not recognize private claims under federal common law for violations of any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when § 1350 was enacted.[3] . . .
> . . . 'Actionable violations of international law must be of a norm that is specific, universal, and obligatory.' And the determination whether a norm is sufficiently definite to support a cause of action should (and, indeed, inevitably must) involve an element of judgment about the practical consequences of making that cause available to litigants in the federal courts." (In footnote 21, the court discussed considering under appropriate circumstances the exhaustion of remedies and the policy of case-specific deference to the political branches).

---

[3]Violation of safe conducts infringement of the rights of ambassadors and piracy.

8

Id. at 732-33.

V.

To determine whether Appellee's conduct violated a specific, universal and obligatory norm of international law, that conduct, the parties agree,[4] must be made in view of the norm of international conduct at the time.

In their briefs, both parties make good faith contentions that arguably support their position with regard to the international norms during the era of 1899 to 1915. While we are inclined to believe that the conduct alleged by Appellants did violate international norms at the time it occurred, a mere inclination does not support a cause of action in our reading of Sosa. The arguments on both sides of the issue of what constituted international norms from 1899 to 1915 are not frivolous. They are substantial and deserve serious consideration. What those arguments illustrate is that satisfying the Sosa criteria of specific, universal and obligatory as well as the Sosa admonition that ". . . federal courts should not recognize private claims under federal common law for violations of any international law norm with less definite content and acceptable among civilized nations than the historical paradigms familiar when § 1350 was enacted.", cannot be achieved in this case. The need for a court to exercise substantial judicial

---

[4]Appellee's Br. 29 (lines 10-13 are not disputed in Appellant's briefs)."

discretion over matters which occurred almost a century ago in order to create a cause of action is contrary to Sosa. Id. at 727.[5]

The appellee argues that the District Court may have dismissed this case on the alternative ground that plaintiffs' claims raise nonjusticiable political questions. We agree that prudential considerations strongly militate in favor of dismissal. While "not every matter touching on politics is a political question," Japan Whaling Ass'n v. American Cetacean Soc., 478 U.S. 221, 229 (1986), decisions relating to political questions such as the one in this case "are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility." Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111 (1948).This case arises out of a war occurring nearly a century ago and implicates delicate foreign policy decisions made long ago – decisions which our courts have long considered inappropriate for judicial review. See Oetjen v. Central Leather Co., 246 U.S. 297 (1918). Moreover there are simply no "judicially discoverable or manageable standards" for adjudicating a case involving the claims of some 125,000

_____

[5]Finally, we note that the facts in Sosa which did not support an action under the ATS were as follows: The DEA had asked the Mexican government for help in getting Alvarez into the United States but were unsuccessful. The DEA then approved a plan to have Mexican nationals seize Alvarez and bring him to the United States for trial. As planned, Sosa and others abducted Alvarez from his house and brought him by private plane to El Paso, Texas where he was arrested by Federal officers. This conduct, committed fairly recently and thus arguably more susceptible of being analyzed in light of known standards, did not survive the scrutiny given to proposed actions under Sosa. This determination under the factual scenario in Sosa emphasizes the difficulty in finding that conduct beginning at the end of the 19th century and ending in the early 20th can form the basis for a cause of action in this case.

putative plaintiffs for damage inflicted decades ago, by a government no longer in existence. See Baker v. Carr, 369 U.S. 186, 220-21 (1962). Finally, while we recognize the gravity of the offense described by the appellants, adjudication of such a claim would at least theoretically open the door to claims by countless aggrieved groups for human rights violations occurring anywhere in the world at any point in the vast expanse of recorded human history. We do not suppose this was the intention of the drafters of the Alien Tort Statute. See Sosa, 542 U.S. at 743 (Scalia, J., concurring) ("[C]reating a federal command (federal common law) out of "international norms," and then constructing a cause of action to enforce that command through the purely jurisdictional grant of the ATS [Alien Tort Statute], is nonsense upon stilts.").[6]

Appellants cannot state a cause of action under applicable law.

In light of our conclusion with regard to the first alleged error, we need not address the second one.

## VI.

For the reasons set forth above, we will affirm the District Court of New Jersey's grant of Appellee's motion to dismiss.

---

[6]Judge Chagares agrees that this case presents a nonjusticiable political question. He views the political question doctrine as a threshold, Article III issue that the court *must* address before reaching the merits. See Larsen v. Senate of Commonwealth of Pa., 152 F.3d 240, 245-46 (3d Cir. 1998) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-95 (1998)). He would, therefore, vacate and remand this case to the District Court with instructions to dismiss the complaint.